UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STRATEGIC TURNAROUND EQUITY
PARTNERS, L.P. (Cayman),

        CASE NO:  10-cv-11305

       Plaintiff,

-vs-        JUDGE:  Stephen J. Murphy, III

JOHN FIFE, et al,

       Defendants.

---

**UNITED AMERICAN HEALTHCARE CORPORATION'S AND THOMAS GOSS'S
MOTION TO DISMISS**

        Defendants United American Healthcare Corporation ("UAHC") and Thomas Goss, through their attorneys, Honigman Miller Schwartz and Cohn LLP, hereby files this motion to dismiss Plaintiff Strategic Turnaround Equity Partners, L.P.'s Supplemental Amended Complaint.  Pursuant to E.D. Mich. LR 7.1(a), there was a conference between the attorneys, the nature of the request to dismiss was explained, and concurrence for the relief sought was not obtained.  Support for this motion to dismiss may be found in the accompanying brief in support.

        Respectfully submitted,

        HONIGMAN MILLER SCHWARTZ AND COHN LLP
        *Attorneys for United American Healthcare Corp. and
        Thomas Goss*

Dated: April 28, 2010        By:  <u>s/Kenneth T. Brooks</u>
                Kenneth T. Brooks (P33834)
                Brian T. Quinn (P66272)
                222 North Washington Square, Suite 400
                Lansing, Michigan  48933-1800
                (517) 377-0735
                kbrooks@honigman.com
                bquinn@honigman.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STRATEGIC TURNAROUND EQUITY
PARTNERS, L.P. (Cayman),

                         CASE NO:  10-cv-11305

            Plaintiff,

-vs-                     JUDGE:  Stephen J. Murphy, III

JOHN FIFE, et al,

            Defendants.

---

**UNITED AMERICAN HEALTHCARE CORPORATION'S AND THOMAS GOSS'S
BRIEF IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

CONCISE STATEMENT OF THE ISSUES PRESENTED ........................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT .........................................................................................................................5

I.   Standard for Rule 12 Motions ...................................................................................5

II.  Due to the Amended Proxy Materials, Plaintiff's Exchange Act Count Fails to State an
     Actionable Claim ......................................................................................................5

III. Because Counts II Through VI are Derivative Claims, These Counts Should be Dismissed .10

IV. Count VII (Request for an Order to Set UAHC's Annual Meeting) Should be Dismissed as
     Moot........................................................................................................................16

CONCLUSION.....................................................................................................................16

## CONCISE STATEMENT OF THE ISSUES PRESENTED

I.    Should this Court dismiss Count I of Plaintiff's Supplemental Amended Complaint, the Exchange Act claim, where Count I addresses the initial preliminary proxy materials that were amended before the Supplemental Amended Complaint was even filed and the amended preliminary proxy materials filed with the SEC disclose the very information Plaintiff alleges should be disclosed?

II.   Should this Court dismiss Counts II through VI of Plaintiff's Supplemental Amended Complaint where the claims set forth in these Counts are derivative, Plaintiff makes no allegation that it made the required demand on UAHC, and Plaintiff makes no allegation that UAHC breached any duty directly and individually owed to Plaintiff?

III.  Should this Court dismiss Count VII of Plaintiff's Supplemental Amended Complaint because Count VII is moot in light of this Court's April 9, 2010 Opinion and Order denying Plaintiff's request to order that the annual meeting be held on April 23, 2010?

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, ___ U.S. ___; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009) .......................... 5, 8, 14

*Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003 (6th Cir.2009) ...................................... 10

*Environair, Inc. v. Steelcase, Inc.*, 190 Mich. App. 289; 475 N.W.2d 366 (1991) ..................... 11

*Futernick v. Statler Builders, Inc.*, 365 Mich. 378; 112 N.W.2d 458 (1961) ......................... 11, 13

*Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311 (6th Cir. 1987) ......................................... 11, 13

*Glancy v. Taubman Ctrs.*, 373 F.3d 656 (6th Cir.2004) ................................................................ 10

*Health Call of Detroit v. Atrium Home & Health Care Services, Inc.*, 268 Mich. App. 83; 706 N.W.2d 843 (2005) .................................................................................................................. 11

*In re General Tire & Rubber Co. Sec. Lit.*, 726 F.2d 1075 (6th Cir. 1984) ................................. 10

*Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90. 108; 111 S.Ct. 1711; 114 L.Ed.2d 152 (1991) 10, 12

*Koster v. (American) Lumbermans Mut. Cas. Co.*, 330 U.S. 518; 67 S.Ct. 828; 91 L.Ed. 1067 (1947) ........................................................................................................................................ 14

*Ley v. Visteon Corp.*, 543 F.3d 801 (6th Cir. 2008) ....................................................................... 4

*Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993) .............................................................................. 5

*Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449 (7th Cir. 1998) .............................. 2

*Michigan Nat'l Bank v. Mudgett*, 178 Mich. App. 677; 444 N.W.2d 534 (1989) ................. 11, 15

*Parker v. Kloss*, 1999 WL 33326773 (Mich. App. 1999) ............................................................. 14

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438; 96 S.Ct. 2126; 48 L.Ed.2d 757 (1976) ...... 6

*Virginia M. Damon Trust v. North Country Fin. Corp.*, 325 F.Supp.2d 817 (W.D. Mich. 2004) 12

**Statutes**

15 U.S.C. 78n(a) ......................................................................................................................... 1, 6

28 U.S.C. 1331 .............................................................................................................................. 10

28 U.S.C. 1332 .............................................................................................................................. 10

M.C.L. 450.1402 ........................................................................................................................... 16

M.C.L. 450.1491a(a) ..................................................................................................................... 11

M.C.L. 450.1492a(b) ................................................................................................................ 11, 13

M.C.L. 450.1493a .................................................................................................................... 11, 15

**Other Authorities**

SCHULMAN ET AL., MICHIGAN CORPORATION LAW & PRACTICE § 4.25(c) (2002 Supp.)............. 12

**Rules**

12 C.F.R. 335.401 ............................................................................................................ 9

17 C.F.R. 240.14a-6(a) .................................................................................................. 9

Fed.R.Civ.P. 12(b) ........................................................................................................ 5

Fed.R.Civ.P. 12(b)(6)................................................................................................ 1, 5

Fed.R.Civ.P. 23.1 ..................................................................................................... 12, 15

Fed.R.Civ.P. 56 ............................................................................................................. 4

Fed.R.Civ.P. 8 .............................................................................................................. 14

Fed.R.Civ.P.11 .............................................................................................................. 6

**INTRODUCTION**

Plaintiff Strategic Turnaround Equity Partners, L.P., a New York based hedge fund, is a shareholder of United American Healthcare Corporation ("UAHC"). This lawsuit is part of Plaintiff's strategy to prevent UAHC's largest shareholder from voting at the upcoming annual meeting. In lieu of an answer, UAHC and Thomas Goss move for dismissal of Plaintiff's Supplemental Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

Dismissal of Count I is proper due to the amended preliminary proxy materials UAHC filed with the Securities and Exchange Commission (the "SEC") on April 5, 2010. In its Supplemental Amended Complaint, Plaintiff alleges that preliminary proxy materials initially filed with the SEC failed to disclose certain information in violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a). As Plaintiff admits, however, the initial preliminary proxy materials were amended *before* the Supplemental Amended Complaint was even filed. Plaintiff's allegations therefore pertain to preliminary proxy materials that are no longer in place. Not only do Plaintiff's allegations pertain to the wrong preliminary proxy materials, the amended preliminary proxy materials are markedly different and (importantly) disclose the very information Plaintiff asserts should be disclosed. Because Plaintiff's Count I addresses the initial preliminary proxy materials that were amended before the filing of the Supplemental Amended Complaint, and the amended preliminary proxy materials disclose the information Plaintiff complains of, Plaintiff has failed to state an actionable Exchange Act claim. Additionally, Plaintiff's allegations address the initial preliminary proxy materials filed with the SEC—not the definitive proxy materials that will actually be sent to UAHC's shareholders. Thus, Count I should be dismissed.

Counts II through VII should likewise be dismissed. All of these claims are derivative; therefore, Plaintiff cannot maintain these claims. Under Michigan law, a derivative action is a

suit to enforce the corporation's rights. Because an action must be prosecuted in the name of the real party in interest, only the corporation—not a shareholder—has standing in a derivative action. Also, Michigan law unequivocally provides that a demand must be made on the corporation before any shareholder may bring a derivative action. Further, federal procedure provides that a complaint in a derivative action must be verified and state with particularity any demand by the plaintiff. Since Plaintiff is not the real party in interest, has not alleged that UAHC breached a duty directly and individually owed to Plaintiff, failed to file a verified complaint, and failed to state with particularity (or allege at all) that it made the required demand on UAHC, the derivative claims in Counts II through VI should be dismissed. Finally, Count VII (asking this Court to direct that the annual meeting be held April 23, 2010) should be dismissed as moot since this Court previously denied Plaintiff's motion for an order to hold the annual meeting on April 23, 2010.

## BACKGROUND[1]

UAHC is a Michigan corporation, and its shares are traded on Nasdaq. Docket Entry 8, p. 3-4 ¶6. Thomas Goss is the Chairman of UAHC's Board. *Id.* at 4 ¶7. Plaintiff has held

---

[1] Since UAHC and Mr. Goss have brought their motion under Rule 12(b)(6), the Background section is gathered from the allegations set forth in Plaintiff's Supplemental Amended Complaint, as well as the documents attached thereto and referenced therein. *See*, *e.g.*, *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and central to his claim.").

Further, in denying Plaintiff's motion for an order to set the annual meeting date, this Court advised that it would be convening a scheduling conference to establish an appropriate schedule regarding Plaintiff's motion for preliminary injunction. Docket Entry 26, p. 2. The instant motion to dismiss, however, simply deals with the dispositive and fatal deficiencies in Plaintiff's Supplemental Amended Complaint. Accordingly, the instant motion to dismiss does not involve the numerous defenses—both legal and factual—to Plaintiff's specious claims. Should Plaintiff's Supplemental Amended Complaint survive this motion to dismiss, UAHC and Mr. Goss will expand on its numerous defenses in the supplemental briefing in connection with Plaintiff's motion for preliminary injunction.

shares in UAHC since 2005. *Id.* at 3 ¶5. On March 19, 2010, UAHC announced that it entered into a Voting and Standstill Agreement (the "Standstill Agreement") with shareholder John Fife, whereby Mr. Fife granted UAHC's Board an irrevocable proxy to vote his shares at UAHC's annual meeting. *Id.* at 2 ¶3. A copy of the Standstill Agreement is attached as Exhibit B to Plaintiff's Supplemental Amended Complaint.

According to Plaintiff's Supplemental Amended Complaint, the Standstill Agreement purportedly violates UAHC's Restated Articles of Incorporation ( the "Restated Articles"). *Id.* A copy of the Restated Articles is attached as Exhibit A to Plaintiff's Supplemental Amended Complaint. Further, Plaintiff alleges that under the Standstill Agreement, UAHC will be harmed since Mr. Goss "and his allies on the UAHC Board simply used shareholder funds to buy the Fife Group vote," *id.* at 9 ¶25, "UAHC will be under economic pressure to exercise the call before June 30, 2011, if only to avoid paying more when the put comes due," Docket Entry 8, p. 10 ¶26, and "the tender of all of these shares under a put would cost UAHC at least $3.57 million, representing more than 30% of its available cash, as of December 31, 2009," *id.* at 13 ¶34.

While Plaintiff's Supplemental Amended Complaint alleges how UAHC may be harmed by the Standstill Agreement, and it includes some allegations that all UAHC shareholders may be harmed,[2]  Plaintiff does not allege how it may be individually harmed or how this alleged harm differs from other shareholders. Rather, Plaintiff simply asserts that it will suffer "irreparable harm." *See*, *e.g.*, *id.* at 20 ¶63. Additionally, the Supplemental Amended Complaint does not allege that Plaintiff made the required demand on UAHC regarding the purported violations. Nor is the Supplemental Amended Complaint verified. Nonetheless, Plaintiff—in its

---

[2] *See* Docket Entry 8, p. 10 ¶27 ("UAHC shareholders will suffer if UAHC's share price continues to drop in the wake of the Board's wasteful regime"); *id.* at 27 ¶104 ("Defendant Goss has breached their [*sic*] duty of loyalty **to UAHC and all of its shareholders** . . . .") (emphasis added).

own capacity—filed this lawsuit and a motion for preliminary injunction.  Docket Entries 1 and 6.

On April 5, 2010, UAHC filed amended preliminary proxy materials with the SEC.  *See*, *e.g.*, Docket Entry 8, p. 14 ¶40.[3]  Among other things, the amended preliminary proxy materials fully disclosed this lawsuit and the nature of Plaintiff's allegations.[4]  Moreover, in light of Plaintiff's lawsuit and SEC review requirements, UAHC postponed its April 23, 2010 annual meeting.  Docket Entry 8, p. 28 ¶109.[5]  On April 7, 2010, Plaintiff then filed its Supplemental Amended Complaint.  Notably, the Supplemental Amended Complaint added Count VII, which requested this Court to order UAHC to hold its annual meeting on April 23, 2010.  *Id.* at 28.  A

---

[3] Because Plaintiff's Supplemental Amended Complaint references the amended preliminary proxy materials, the amended proxy materials are considered part of the pleadings. *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008) ("[I]n addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.") (internal quotation omitted).  Therefore, UAHC's and Mr. Goss's motion to dismiss cannot be converted to a motion for summary judgment brought under Fed.R.Civ.P. 56.  For ease of reference, a copy of the amended preliminary proxy materials is attached as *Exhibit 1*.

[4] The amended preliminary proxy materials provide:

On March 31, 2010, [Plaintiff] filed suit against [UAHC], Mr. Thomas Goss (Chairman of the Board), St. George Investments, LLC, John Fife, Fife Trading, Inc., Iliad Research and Trading, L.P. and Iliad Management, LLC, in the U.S. District Court for the Eastern District of Michigan.  In its complaint, [Plaintiff] alleges that [UAHC] violated the Exchange Act by omitting the disclosure required in [UAHC's] proxy statement for Mr. Fife and his affiliate companies as solicitation participants, that [UAHC] breached its Restated Articles of Incorporation (the "Restated Articles") and violated Michigan law by entering into an agreement which allows for the purchase of shares at an above Market Price (as that term is defined in the Restated Articles) and that Mr. Goss breached his fiduciary duty of loyalty.  [Plaintiff] seeks injunctive relief enjoining the defendants from, among other things, soliciting and delivering any proxy, consent or authorization with respect to [UAHC's] securities.

*Exhibit 1*, pp. 17-18.

[5] Initially postponed to July 30, 2010, Nasdaq advised UAHC today that the annual meeting must be held before July 1, 2010 under Nasdaq listing requirements.

few minutes after filing its Supplemental Amended Complaint, Plaintiff filed an emergency motion for an order directing the holding of UAHC's annual meeting on April 23, 2010.  Docket Entry 9.  This Court denied Plaintiff's motion.  Docket Entry 26.

## ARGUMENT

### I.  Standard for Rule 12 Motions

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  In assessing the sufficiency of a complaint, the court must first determine whether it contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, ___ U.S. ___; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.

*Id.* at 1950 (internal citations omitted).

### II.  Due to the Amended Proxy Materials, Plaintiff's Exchange Act Count Fails to State an Actionable Claim

In its Supplemental Amended Complaint, Plaintiff makes numerous allegations regarding UAHC's preliminary proxy materials.  Even assuming for the sake of argument that some of

these allegations had merit (which UAHC and Mr. Goss dispute), Plaintiff's allegations in Count I of the Supplemental Amended Complaint have been rendered moot by UAHC's filing of *amended* preliminary proxy materials on April 5, 2010—two days *before* Plaintiff filed its Supplemental Amended Complaint.[6]   In short, Count I addresses preliminary proxy materials that have been amended and, therefore, are not at issue.

> Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), provides:

> It shall be unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . registered pursuant to section 78L of this title.

Rule 4a-9, promulgated by the SEC under section 14(a) of the Exchange Act, provides that no proxy solicitation shall be made "which . . . is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statement therein not false of misleading." In *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438; 96 S.Ct. 2126, 2132; 48 L.Ed.2d 757 (1976), the Supreme Court established the standard for when the omission of fact in conjunction with a proxy solicitation is actionable.  The Court concluded that an "omitted fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding how to vote." *Id.*  The Court further explained that the question of materiality is "an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *Id.* at 2130.

Here, in paragraphs 32-40 of its Supplemental Amended Complaint, Plaintiff asserts that Defendants have "disseminated misleading and illegal proxy materials."  Docket Entry 8, pp. 12-

---

[6] Despite full and admitted knowledge that the initial preliminary proxy materials were amended, Plaintiff elected to file its Supplemental Amended Complaint based on such initial and superseded materials.   Accordingly, Fed.R.Civ.P. 11 is implicated since Plaintiff made contentions that Plaintiff knew no longer had evidentiary or legal support.

14.  However, the allegations set forth in paragraphs 32-40 address the prior and superseded

preliminary proxy materials, not the amended preliminary proxy materials:

> **Allegation**:  "[T]he UAHC Proxy fails to disclose that defendant Fife is a 'participant' in the UAHC solicitation, within the meaning of SEC regulations." *Id.* at 12, ¶ 32.

> **Fact**:  The amended proxy materials expressly disclose Mr. Fife as a "participant." *Exhibit 1.*

> **Allegation**:  "[T]he UAHC Proxy does not disclose that the put price is $1.25 per share, that the call price is $1.13 per share, and that both of these prices are substantial premiums to the closing price on March 19, 2006 [*sic*], the date on which the Voting Agreement was signed." Docket Entry 8, p. 12, ¶ 33.

> **Fact**:  The amended proxy carefully and expressly discloses the put price and call price. *Exhibit 1.*

> **Allegation**:  The proxy materials fail to disclose that "under the Voting Agreement, defendant Fife may acquire up to 35% of UAHC common stock, and also receive more shares through the 'Preferred Call.'" Docket Entry 8, p. 13, ¶ 34; *see also id.* at 13, ¶ 35.

> **Fact**:  The amended proxy materials expressly disclose the circumstances whereby Mr. Fife could possibly acquire 35% of the common stock.  And the amended proxy materials set forth the Preferred Call details in a straightforward manner. *Exhibit 1.*

> **Allegation**:  "The UAHC Proxy also touts the fact that when its shares trade a $2.21 per share on a sustained basis, the put and call will end.  These numbers are highly misleading.  They were plucked from thin air by the Board in order to create the illusion that the put and call might, on some circumstances, disappear." Docket Entry 8, p. 13, ¶ 36.

> **Fact**:  Under some circumstances, the put and call would end.  Moreover, the amended proxy sets forth the circumstances under which they may end.  Additionally, the $2.21 per share figure was not "plucked from thin air."  Rather, the $2.21 per share figure was the 2009 high price.  Accordingly, there is a sound basis for the $2.21 per share figure. *Exhibit 1.*

> **Allegation**:  "The UAHC Proxy, however, fails to advise UAHC shareholders that Mr. Fife is subject to an SEC order barring him from associating with any investment advisor as well as an SEC judgment restraining from participating in any form of securities fraud." Docket Entry 8, pp. 13-14, ¶ 37.

**Fact**: The amended proxy expressly discloses the SEC action against Mr. Fife. *Exhibit 1.*

**Allegation**: "The UAHC Proxy does not disclose that the sole purpose behind the Voting Agreement is to obtain control over the key block of shares owned by the Fife Group." Docket Entry 8, p. 14, ¶ 38.

**Fact**: While this allegation mischaracterizes the purpose behind the Standstill Agreement, the amended proxy materials nonetheless sets forth the purpose of the Standstill Agreement and the information concerning Mr. Fife and related persons. *Exhibit 1.*

**Allegation**: "Last, the UAHC Proxy also fails to disclose that, under the Restated Articles of UAHC, the Voting Agreement requires shareholder approval to implement all its material terms." Docket Entry 8, p. 14, ¶ 39.

**Fact**: These allegations are dependent on derivative legal argument—not fact— regarding Plaintiff's other Counts. Because Plaintiff's other Counts are improper, there is no violation of the Exchange Act.

Again, the allegations in the Supplemental Amended Complaint address the initial and superseded preliminary proxy materials. Knowing that the initial preliminary proxy materials were amended and no longer in place, Plaintiff nonetheless elected to base Count I on such initial materials. Indeed, the sole allegation in connection with the amended preliminary proxy materials appears in paragraph 40: "Although UAHC has amended the UAHC proxy, it remains materially misleading. Among other things, UAHC continues to claim control over the shares held by the Fife Group." Docket Entry 8, p. 14 ¶40. Such an allegation falls fatally short of the standards set forth in *Iqbal*, *supra*. Rather, Plaintiff simply asserts that the amended preliminary proxy materials are "materially misleading" (a legal conclusion and an element of any Section 14(a) claim). No adequate allegation is provided on *how* the amended preliminary proxy materials are purportedly "materially misleading." No adequate allegation is provided on *how or where* in the amended preliminary proxy materials UAHC claims control over shares held by the so-called Fife Group. The threadbare allegations set forth in paragraph 40 are simply Plaintiff's

misguided effort to revive an unfounded Exchange Act claim where an amendment has duly occurred.

In sum, Count I should be dismissed. Plaintiff admits that the initial preliminary proxy materials were amended before the Supplemental Amended Complaint was even filed. Accordingly, the initial preliminary proxy materials are no longer in place. Moreover, and as set fort above, the amended preliminary proxy materials disclose the very information Plaintiff asserts should be disclosed. As such, the Supplemental Amended Complaint fails to state an actionable Exchange Act claim. Further, preliminary proxy materials filed with the SEC are akin to a draft. The initial draft proxy materials that UAHC sent to the SEC were revised and amended.[7] Indeed, Plaintiff's allegations address a superseded draft and, thus, do not address the definitive proxy statement actually sent to shareholders. Therefore, Count I should be dismissed because:

- Count I addresses the initial preliminary proxy materials.

- The initial preliminary proxy materials were amended before the filing of the Supplemental Amended Complaint.

- The Supplemental Amended Complaint therefore addresses the wrong preliminary proxy materials.

- The amended preliminary proxy materials actually disclose the information Plaintiff complains of in its Supplemental Amended Complaint.

_____

[7] Generally, in a contested election, as here, preliminary copies of the proxy statement and form of proxy must be filed with the SEC at least 10 calendar days prior to the date definitive copies of such material are first sent or given to shareholders, or such shorter period prior to that date as the SEC may authorize upon a showing of good cause thereunder. 17 C.F.R. § 240.14a-6(a); 12 C.F.R. § 335.401. Subsequently, a definitive proxy statement, form of proxy, and other soliciting materials must be filed with the SEC in the same form as the materials actually sent to shareholders. 17 C.F.R. § 240.14a-6(b) and 12 C.F.R. § 335.401.

- The allegations do not address the definitive proxy materials to be sent to shareholders—*i.e.*, the reasonable investors.[8]

**III.  Because Counts II Through VI are Derivative Claims, These Counts Should be Dismissed**

Whether a claim is direct or derivative is governed by the law of the company's state of incorporation. *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90. 108; 111 S.Ct. 1711; 114 L.Ed.2d 152 (1991); *In re General Tire & Rubber Co. Sec. Lit.*, 726 F.2d 1075, 1080-81 (6th Cir. 1984). Michigan is UAHC's state of incorporation.  Docket Entry 8, p. 3 ¶ 6 ("Defendant United American Healthcare Corporation ('UAHC' or the 'Company') is a Michigan corporation with its headquarters in Detroit, Michigan.").  Michigan law therefore applies in this case.

---

[8] In its Supplemental Amended Complaint, Plaintiff alleges that this Court has subject-matter jurisdiction based on federal question, 28 U.S.C. § 1331, and diversity, 28 U.S.C. § 1332.  If this Court dismisses Plaintiff's Exchange Act claim (Count I), federal question jurisdiction is absent.  This is problematic because, based on the allegations set forth in the Supplemental Amended Complaint, diversity jurisdiction appears absent.

First, Plaintiff fails to sufficiently allege that the parties are diverse.  It is well established that the citizenship of a limited liability company's individual members determines the company's citizenship for purposes of diversity jurisdiction. *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir.2009).  Similarly, the citizenship of a limited partnership is determined by the citizenship of its partners, both general and limited. *See, e.g., Glancy v. Taubman Ctrs.*, 373 F.3d 656, 672 (6th Cir.2004).  Here, Plaintiff alleges that it is a Cayman Islands limited partnership and its general partner is Galloway Capital Management, LLC. Docket Entry 8, p. 3 ¶5.  Plaintiff, however, fails to allege the citizenship of all its partners or Galloway Capital Management, LLC's members.  Similarly, Plaintiff fails to allege the citizenship of the members or partners (as the case may be) of defendants St. George Investments, LLC; Iliad Research and Trading, L.P.; or Iliad Management, LLC.  Docket Entry 8, p. 4 ¶¶ 9-12.  Thus, Plaintiff has failed to sufficiently allege that the parties are diverse.

Second, even assuming for the sake of argument that the numerous entities involved in this case are diverse, the $75,000 jurisdictional threshold has not been sufficiently pled.  In its Supplemental Amended Complaint, while Plaintiff cursory alleges that the amount in controversy exceeds $75,000, Docket Entry 8, p. 3 ¶4, Plaintiff wholly fails to allege any individualized or particularized harm, much less any individualized or particularized harm that exceeds $75,000, should an injunction not issue.

As set forth above, UAHC's and Mr. Goss's motion is limited to dismissal under Fed.R.Civ.P. 12(b)(6).  At a minimum, however, Plaintiff should be ordered to show cause that the requirements for diversity jurisdiction are satisfied.

Under Michigan substantive law, a derivative action is a "civil suit in the right of a domestic corporation or a foreign corporation that is authorized to or does transact business in [Michigan]." M.C.L. 450.1491a(a). Accordingly, a derivative action is a suit to enforce the right of the corporation. M.C.L. 450.1492a(b); *see also Futernick v. Statler Builders, Inc.*, 365 Mich. 378, 386; 112 N.W.2d 458 (1961). Because an action must be prosecuted in the name of the real party in interest, only the corporation—not a shareholder—has standing in a derivative action. *Environair, Inc. v. Steelcase, Inc.*, 190 Mich. App. 289, 292; 475 N.W.2d 366 (1991), overruled on other grounds in *Health Call of Detroit v. Atrium Home & Health Care Services, Inc.*, 268 Mich. App. 83; 706 N.W.2d 843 (2005). Such a rule recognizes "the general precept of corporate law that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation." *Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987).

There is an exception to this rule where an individual shareholder proves that a duty owed directly to him was breached. *Michigan Nat'l Bank v. Mudgett*, 178 Mich. App. 677, 679; 444 N.W.2d 534 (1989). Michigan law is clear, however, that this exception does not arise "merely because the acts complained of resulted in damage both to the corporation and to the individual, but is limited to cases where the wrong done amounts to a breach of duty owed to the individual personally". *Id.* at 679-80. Thus, "where the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action." *Id.* at 680.

Moreover, Michigan law mandates that a shareholder make a demand on the corporation before commencing a derivative action. M.C.L. 450.1493a. Demand cannot be "excused" or be "futile" under Michigan substantive law:

11

> The 1989 Amendments make demand on the corporation mandatory prior to the initiation of any derivative suit but authorize the filing of a suit upon the corporation's rejection of demand, or upon the expiration of ninety days from the date the demand was made, or earlier if irreparable injury to the corporation would result from the ninety-day delay. **These clear and universal rules should end the complex litigation over the issues of whether demand is excused and the effect of the board's refusal to bring suit in response to demand. The unconditional demand requirement also will ensure that corporations have some opportunity to take corrective action directly.**

SCHULMAN ET AL., MICHIGAN CORPORATION LAW & PRACTICE § 4.25(c) (2002 Supp.) (emphasis supplied); *see also Virginia M. Damon Trust v. North Country Fin. Corp.*, 325 F.Supp.2d 817, 821 (W.D. Mich. 2004) ("Michigan has adopted a universal demand rule, mandating pre-suit demand upon a corporation in all circumstances and providing no possibility for circumvention of this rule by assertions of futility."). This universal demand rule makes sense because, as the Supreme Court reasoned, a demand requirement "clearly regulates the allocation of corporate governing power between the directors and individual shareholders." *Kamen*, 500 U.S. at 108.

While Michigan substantive law applies in this case, it must be observed that there is some overlap with federal procedural law. In a derivative action, federal procedure provides, among other things, that the complaint must be verified and state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members. Fed.R.Civ.P. 23.1.

First, Counts II through VI are clearly derivative claims. For example, in Count II of its Supplemental Amended Complaint, Plaintiff alleges that all shares of the common stock UAHC assigned to Defendant St. George (or, in the alternative, all shares acquired by the "Fife Group" which caused the "Fife Group" to own 1/5 or more of UAHC's issued and outstanding common stock and all shares of UAHC's common stock the "Fife Group" purchased within "the 90-day period prior thereto') cannot be voted since such voting would violate Article XIX of UAHC's Restated Articles. Docket Entry 8, pp. 19-20. By its very nature, Count II is derivative because

UAHC—not any shareholder—has the power to ensure that its corporate articles are not violated and receive any plausible remedy. *See*, *e.g.*, M.C.L. 450.1492a(b); *Futernick*, 365 Mich. at 386.

Likewise, in Count III, Plaintiff alleges that the Standstill Agreement breaches Section 1 of Article XV of UAHC's Restated Articles. Docket Entry 8, pp. 21-23. Any purported harm Plaintiff allegedly may suffer is derivative to that of UAHC itself. Indeed, Plaintiff does not allege that its claimed harm is individualized—*i.e.*, direct and different than other shareholders or UAHC itself. *See*, *e.g.*, *Gaff*, 814 F.2d at 315 ("A depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized, however, as the type of direct, personal injury which is necessary to sustain a direct cause of action . . . . The reasoning behind this rule is that a diminution in the value of corporate stock resulting from some depletion of or injury to corporate assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder.").

With respect to Count IV, there is no question that the only "plausible" harm gleaned from the allegations set forth in the Supplemental Amended Complaint would be to UAHC. *See* Docket Entry 8, p. 25 ¶ 85 ("The put and call options require UAHC to dispose of at least $2,108.493 (1,882,593 x $1.12) in cash, and as much as $3,560,332 if the Fife Group acquires 35% of UAHC's common stock. In fact, UAHC is required to reserve over $2 million to honor the Fife Group's put."). As with Counts II and III, Plaintiff does not even attempt to set forth any allegations showing how it allegedly may experience individualized harm. Count V of the Supplemental Amended Complaint fails for the same reason since Plaintiff expressly alleges that Count V violates Article XIX for the same reasons as set forth in Count IV. *Id.* at p. 27 ¶ 97.

Finally, Count VI—by its express terms—is a derivative claim. In Count VI, Plaintiff alleges that "Defendant Goss, as a member of the Board of Directors of UAHC, owed and owe

[*sic*] a fiduciary duty of loyalty **to UAHC and all its shareholders** . . . ." Docket Entry 8, p. 27 ¶ 103 (emphasis added). Further, Plaintiff expressly alleges that "Defendant Goss has breached their [*sic*] duty of loyalty **to UAHC and all of its shareholders** . . . ." *Id.* at ¶ 104 (emphasis added). This too is unquestionably a derivative claim. *See*, *e.g.*, *Koster v. (American) Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 522 ; 67 S.Ct. 828; 91 L.Ed. 1067 (1947) (concluding that a shareholder derivative action "is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers."); *Parker v. Kloss*, 1999 WL 33326773 (Mich. App. 1999) (attached as *Exhibit 2*) (concluding that the plaintiff's "claim of breach of fiduciary duty-which is based directly on allegations of embezzlement and waste of corporate assets-clearly alleges injury to [the plaintiff] which is merely derivative of injury suffered by the corporation, and he does not have standing to pursue this claim individually."). In sum, Counts II through VI set forth derivative claims.

Second, since Counts II through VI are derivative, Plaintiff's Supplemental Amended Complaint should be dismissed because it fails to comport with controlling law. For example, while Plaintiff perfunctorily alleges that it will suffer "irreparable harm" (a necessary element of injunctive relief) unless UAHC is enjoined from breaching the Restated Articles and the MBCA, *see*, *e.g.*, Docket Entry 8, p. 20 ¶63, such allegations do not satisfy Fed.R.Civ.P. 8's pleading requirements. In *Iqbal*, the United States Supreme Court rejected the use of bare legal conclusions to satisfy Rule 8. *Iqbal*, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While noting that Rule 8 "does not require detailed factual allegations," the Supreme Court reiterated its view that Rule 8 "demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (internal quotations omitted). Accordingly, under *Iqbal* and the standards governing Rule 12 motions, Counts II through VI should be dismissed because Plaintiff fails to adequately plead individual harm. Even giving Plaintiff's Supplemental Amended Complaint every benefit of doubt, it is clear that Plaintiff's conclusory allegation of "irreparable harm" derives from an alleged injury to UAHC. As such, Counts II through VI are derivative and must be dismissed.

Moreover, and importantly, nowhere in the Supplemental Amended Complaint does Plaintiff allege that it made a demand on UAHC. This is fatal to Counts II and VI and, consequently, Plaintiff lacks standing under Michigan law. M.C.L. 450.1493a. Plaintiff's Supplemental Amended Complaint is also procedurally improper under Fed.R.Civ.P. 23.1 since Plaintiff failed to file a verified complaint and state with particularity (or allege at all) that it made the required demand on UAHC. Further, Plaintiff cannot maintain a direct cause of action with respect to Counts II through VI because Plaintiff wholly failed to allege or explain how any duty owed directly and individually to Plaintiff was breached in this case. *Mudgett*, 178 Mich. App. at 679. Therefore, Counts II through VI should be dismissed because:

- Plaintiff lacks standing because Counts II through VI are clearly derivative and Plaintiff is not the real party in interest.

- Plaintiff cannot maintain a derivative action because it failed to make a demand on UAHC.

- Plaintiff cannot maintain a direct cause of action with respect to Counts II through VI because Plaintiff makes no allegations that UAHC breached any duty directly and personally owed to Plaintiff.

- Plaintiff's threadbare allegation of "irreparable harm" fails to satisfy Rule 8's pleading requirements as set forth in *Iqbal*.

- Plaintiff's Supplemental Amended Complaint violates Rule 23.1 because it is not verified and fails to state with particularity that it made any demand on UAHC.

IV.    **Count VII (Request for an Order to Set UAHC's Annual Meeting) Should be Dismissed as Moot**

Like Counts II through VI, Plaintiff's Count VII is likewise derivative and fails for the same reasons set forth above. An additional reason, however, exists for dismissing this claim: mootness.

On information and belief, Plaintiff filed its Supplemental Amended Complaint in order to add Count VII. Count VII sets forth a claim that, pursuant to M.C.L. 450.1402, this Court should direct UAHC to hold its annual meeting on April 23, 2010. Docket Entry 8, p. 28. A few minutes after filing its Supplemental Amended Complaint, Plaintiff filed a motion for an order directing the holding of UAHC's annual meeting on April 23, 2010. Docket Entry 9. This Court denied Plaintiff's motion. Docket Entry 26. In its April 9, 2010 Opinion and Order, this Court found "that it lacks authority to direct that the annual meeting take place on April 23, 2010, or any date for that matter." *Id.* at 3. After analyzing the issues raised in Plaintiff's motion for an order directing the holding of UAHC's annual meeting on April 23, 2010, this Court denied the motion, concluding that "an annual meeting on April 23, 2010 appears unworkable". *Id.* at 5. Because Plaintiff's motion was effectively a motion on Count VII, and this Court has denied Plaintiff's motion, UAHC and Mr. Goss request that Count VII be dismissed to comport with this Court's April 9, 2010 Opinion and Order.

## CONCLUSION

For the reasons set forth above, UAHC and Mr. Goss respectfully request that this Court grant their motion and dismiss Plaintiff's Supplemental Amended Complaint. Count I should be dismissed because Plaintiff has failed to state an actionable claim under the Exchange Act. Plaintiff's allegations pertain to the wrong preliminary proxy materials. In any event, the amended preliminary proxy materials set forth the very information Plaintiff asserts should be

16

disclosed. Further, Counts II through VI should be dismissed since these Counts are all derivative, Plaintiff lacks standing, Plaintiff failed to allege that it made a demand on UAHC in violation of Michigan substantive law and federal civil procedure, the Supplemental Amended Complaint is not verified, and Plaintiff cannot convert his derivative claim into direct claims because Plaintiff makes no allegations whatsoever that UAHC breached any duty directly and personally owed to Plaintiff. Moreover, Plaintiff's threadbare allegation of "irreparable harm" fails to satisfy Rule 8's pleading requirements as set forth in *Iqbal*. Finally, Count VII (asking this Court to direct that the annual meeting be held April 23, 2010) should be dismissed as moot in light of this Court's April 9, 2010 Opinion and Order.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
*Attorneys for United American Healthcare Corp. and*
*Thomas Goss*

Dated: April 28, 2010          By:   s/Kenneth T. Brooks
                                     Kenneth T. Brooks (P33834)
                                     Brian T. Quinn (P66272)
                                     222 North Washington Square, Suite 400
                                     Lansing, Michigan  48933-1800
                                     (517) 377-0735
                                     kbrooks@honigman.com
                                     bquinn@honigman.com

17

**CERTIFICATE OF SERVICE**

The undersigned states that on April 28, 2010, a copy of United American Healthcare

Corporation's And Thomas Goss's Motion to Dismiss and Brief In Support were served via the

Court's ECF System, upon all counsel of record.


Dated: April 28, 2010                    By:   s/Kenneth T. Brooks
                                               Kenneth T. Brooks (P33834)
                                               Brian T. Quinn (P66272)
                                               222 North Washington Square, Suite 400
                                               Lansing, Michigan  48933-1800
                                               (517) 377-0735
                                               kbrooks@honigman.com
                                               bquinn@honigman.com