## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STRATEGIC TURNAROUND EQUITY
PARTNERS, L.P. (CAYMAN),

                              Plaintiff,

          -vs-

JOHN FIFE, UNITED AMERICAN
HEALTHCARE CORPORATION, THOMAS
GOSS, ST. GEORGE INVESTMENTS, LLC.,
FIFE TRADING, INC., ILIAD RESEARCH AND
TRADING, L.P., and ILIAD MANAGEMENT,
LLC.,

                              Defendants.

Case 2:10-cv-11305-SJM-MJH

Honorable Stephen J. Murphy

Magistrate Judge Michael J. Hluchaniuk

## <u>FIRST SUPPLEMENTAL AMENDED COMPLAINT</u>

Plaintiff Strategic Turnaround Equity Partners, L.P. ("STEP"), by its undersigned

attorneys, for its First Supplemental Amended Complaint against defendants United

American Healthcare Corporation, Thomas Goss, St. George Investments, LLC., John Fife, Fife

Trading, Inc., Iliad Research and Trading, L.P., and Iliad Management, LLC., alleges on

knowledge as to its own actions and otherwise on information and belief as follows:

<u>Nature of Action</u>

1.      Plaintiff has owned shares of defendant United American Healthcare Corporation

("UAHC" or the "Company") since 2005 and recently nominated three candidates for election to

UAHC's seven person Board of Directors.  For the past three years, UAHC's business has been

in severe decline, with profits turning to losses, while revenue and share price have plummeted.

Recognizing that UAHC's shareholders will vote for new leadership, UAHC's incumbent Board

has resorted to extraordinary and unlawful tactics.

998778-1

2.      First, UAHC's incumbent directors delayed the Company's 2009 Annual Meeting to April 23, 2010, almost 18 months after the 2008 Annual Meeting.  While shareholders were denied the ability to vote, defendant John Fife rapidly accumulated approximately 23% of UAHC's shares.  As his share position increased, defendant Fife engaged in regular discussions with UAHC's incumbent directors about possible "collaboration."  Defendant Fife has a checkered past, including a recent judgment for securities fraud obtained by the Securities and Exchange Commission ("SEC").

3.      On March 19, 2010, UAHC at last disclosed its "collaboration" with defendant Fife — a Voting and Standstill Agreement in which Fife grants to UAHC's incumbent Board an irrevocable proxy to vote his key block of shares at the Annual Meeting.  The proxy was purchased with shareholder funds, through a "put" that obligates UAHC to buy the Fife block at $1.25 per share, 18% higher than the closing price on March 19, 2009 ($1.06).  The Restated Articles of Incorporation of UAHC, however, include extensive protections for shareholders from abusive acts by control shareholders such as Fife and from directors anxious to use shareholder funds to ward off efforts to change corporate governance.  These protections include an anti-greenmail provision, an article prohibiting certain "business combinations" with "interested shareholders" (such as Fife), and a provision barring voting by "control shares," such as the Fife block.  The UAHC/Fife Voting Agreement violates each of these provisions, as well as Article 7A of Michigan's Business Corporation Act, § 450.1780.  To make matters worse, UAHC and its Chairman, defendant Goss, are now soliciting shareholder support with proxy material that is false and misleading.  They have now purported to cancel the belated 2009 meeting, claiming that it will be held on July 30, 2010.  Injunctive relief is urgently required to assure that UAHC's belated 2009 Annual Meeting is conducted on time, on a level playing field,

2

in conformance with the federal and Michigan law and with UAHC's own Restated Articles of
Incorporation.

Jurisdiction and Venue

4.    This Court has jurisdiction and venue is proper in this District pursuant to
Section 27 of the Securities Exchange Act of 1934, as amended ("the Exchange Act"), 15
U.S.C. § 78aa, federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(3), and
28 U.S.C. § 1391 (b)(2).  Section 27 of the Exchange Act, 15 U.S.C. § 78aa, confers
exclusive jurisdiction upon the federal courts for "all suits in equity and actions at law" to
enforce any liability or duty under the Exchange Act.  Section 27 further provides that any
such suit or action may be brought in any district in which "any act or transaction
constituting the violation occurred."  The acts and transactions constituting the violations
alleged herein have taken place in this District, by virtue of UAHC's office here, and
Defendants' contacts with UAHC.  The Court also has jurisdiction pursuant to 28 U.S.C.
§ 1332, as there is complete diversity of citizenship between the parties and the amount in
controversy exceeds $75,000, exclusive of interest and costs.  The object of the case is
potential control over a publicly traded company with market capitalization in excess of $9
million.  Plaintiff's shareholdings in UAHC have a market value in excess of $500,000 and those
controlled by UAHC through a proxy issued by St. George Investments, LLC ("St. George")
have a value more than two million dollars.  Among other things, plaintiff asks the Court to
enjoin voting of in excess of 1.5 million shares; those have shares a market value well in excess
of $1 million.  Plaintiff's other counts seek, among other things, to enjoin UAHC's potential
purchase of more than 2 million shares at $1.25 per share.

<u>The Parties</u>

5.     Plaintiff Strategic Turnaround Equity Partners, L.P. (Cayman) ("STEP") is a limited partnership organized under the laws of the Cayman Islands.  Its general partner is Galloway Capital Management, LLC ("GCM").  The sole members of GCM are Bruce Galloway and Gary Herman, who are domiciliaries of Florida and New York, respectively.  The sole limited partner of STEP is Strategic Turnaround Master Partnership, Ltd., a company formed under the Cayman Islands laws with its principal place of business in George Town, Grand Cayman.  Plaintiff is an investment fund that has held shares in UAHC since 2005.  STEP filed its initial Schedule 13D under the Exchange Act, disclosing its beneficial ownership of more than five percent of UAHC's shares on June 15, 2007.

6.     Defendant United American Healthcare Corporation ("UAHC" or the "Company") is a Michigan corporation with its headquarters and principal place of business in Detroit, Michigan.  UAHC's shares are registered under Section 12 of the Exchange Act, and its shares are traded on the NASDAQ capital markets exchange under the symbol "UAHC."  The Company was formerly engaged in managed healthcare.  For the past two years, its business operations have been winding down.  UAHC is a citizen of Michigan for diversity purposes.

7.     Defendant Thomas Goss is a domiciliary of Michigan and Chairman of the Board of UAHC.  His principal residence and domicile is located at 8162 East Jefferson, Detroit, Michigan.  Mr. Goss is a citizen of Michigan for diversity purposes.  Mr. Goss has served as Chairman since November 2008, and a director since 2000.

8.     Defendant John Fife is a domiciliary of Illinois.  His principal residence and domicile is located at 360 East Randolph Street, Chicago, Illinois.  Mr. Fife is a citizen of Illinois for diversity purposes.  Through his companies, Mr. Fife owns and controls the largest block of UAHC common stock.  Mr. Fife and his affiliated companies are referred to as the "Fife Group."

4

In 2007, the SEC brought an action against Mr. Fife alleging that he had engaged in a securities fraud. Later that year, he consented to a judgment in favor of the SEC in the amount of $534,382.

9.      Defendant St. George Investments, LLC ("St. George") is an Illinois limited liability company. Its sole member is John Fife, who is an Illinois domiciliary. St. George is a citizen of Illinois for diversity purposes.

10.     Defendant Fife Trading, Inc. ("FTI") is an Illinois corporation with its principal place of business in Chicago, Illinois. FTI is a citizen of Illinois for diversity purposes. FTI is owned and managed by defendant John Fife.

11.     Defendant Iliad Research and Trading, L.P. ("IRT") is a Delaware limited partnership whose sole partner is Property Tax Assessor Records Corp., an Illinois corporation with its principal place of business in Chicago, Illinois. IRT is a citizen of Illinois for diversity purposes.

12.     Defendant Iliad Management, LLC ("IM LLC") is a Delaware limited liability company, whose sole member is defendant John Fife. IM LLC is a citizen of Illinois for diversity purposes.

<u>UAHC's Declining Business</u>

13.     In December 2006, UAHC common stock closed at $9.05 per share. Two years later, when UAHC held its 2008 Annual Meeting on November 7, 2008, UAHC common stock had plummeted to $1.90 per share, a staggering decline in just two years. On April 22, 2008, UAHC announced that it had lost its major healthcare contract. Its share price declined 50% on the day of the announcement alone. As its business has unwound, UAHC's revenue has dried up. For the quarter ending December 31, 2007, UAHC had $7,048,000 in revenue. For the same

three months in 2009, it posted a mere $1,701,000 in revenue.  For the fiscal year ending

June 30, 2009, the Company reported a net loss of $8.7 million on revenue of $16.6 million.

14.     As the Company has floundered, its Board, lead by defendant Goss, has lavished

senior management and themselves with benefits, all for no ostensible business purpose.  As of

June 30, 2008, UAHC had approximately $27 million in cash and marketable securities.  Since

then the Board has made virtually no effort to conserve these resources.  In fact, the Company:

- Rents 3,800 sq ft. of art-adorned luxury office space in Detroit for only 4 employees

- Pays its CEO over $470,000 in compensation even though he has very few employees
  and virtually no business to run

- Paid members of the Board annual cash retainers and cash meeting fees of $383,500
  ($224,000, or 58% of which was paid to the current Board nominees) as well as stock
  options for a total Board compensation of over $600,000 in Fiscal 2009.

- In Fiscal 2009, defendant Goss received almost $140,000 of total compensation or
  almost 23% of the Board's total compensation.

<u>Plaintiff's Challenge to the Incumbent Board</u>

15.     Defendant UAHC has a staggered board with seven members, each serving a

three-year term.  On September 15, 2008, plaintiff STEP provided notice to UAHC that it was

contemplating a proxy contest for the sole Board seat available at the 2008 Annual Meeting.  The

Board of UAHC agreed to accept STEP's candidate for election that year.  Before STEP's

nominee joined the Board, however, UAHC's directors approved "retention packages" for senior

management, guaranteeing hefty bonuses if they stayed with UAHC, or if a new Board

terminated their services.  These retention packages represented perhaps the most flagrant act of

corporate waste by the Board.  Throughout 2009, STEP's nominee, Mr. Bruce Galloway, urged

998778-1

defendant Goss and other Board members to cut costs and run the Company for the benefit of its shareholders, not those on the corporate payroll. Mr. Galloway's proposals fell on deaf ears.

16.     On July 28, 2009, plaintiff STEP announced that it would nominate three candidates for election to the Board of UAHC, including a challenge for the seat held by defendant Goss. This nomination was timed to meet the advance notice requirements for the 2009 Annual Meeting, which should have occurred twelve months after the last meeting, i.e., in November 2009. On September 11, 2009, plaintiff also filed its preliminary proxy material with the SEC. UAHC's Board, however, refused to schedule the Company's Annual Meeting in November, breaking with a decade long practice. The Board's delay was timed to provide an opportunity for defendant Fife.

<u>The Emergence of the Fife Group as a Control Shareholder</u>

17.     On November 24, 2009, defendant Fife and his companies filed their initial Schedule 13D with the SEC, disclosing their collective ownership of 838,833 shares of UAHC common stock, representing approximately 10.31% of the issued and outstanding shares. According to the initial filing, the Fife Group began to purchase shares on October 1, 2009. The trading data on their Schedule 13D disclosed that on October 20, 2009, the Fife Group acquired 3% of UAHC's common stock and became subject to the anti-greenmail provisions in UAHC's Restated Articles of Incorporation (the "Restated Articles"), namely Article XV. On November 17, 2009, the Fife Group acquired 10% of UAHC's common stock and became an "Interested Shareholder" under Article XVI of the Restated Articles and under Article 7A of the Business Corporation Act, Section 450.1780. The Restated Articles are annexed as Exhibit A.

18.     In the weeks after filing the Schedule 13D, Mr. Fife began a dialogue with UAHC's CEO, Williams Brooks and its Chairman, defendant Goss. Defendant UAHC's proxy materials disclose that Mr. Fife and "representatives" of UAHC discussed "various proposals for

7

collaboration" throughout January, February and March 2010. Upon information and belief, defendant Goss was the key player in these talks from UAHC.

19.     As the parties' discussions progressed, defendant Fife and his companies continued to purchase UAHC shares at a rapid pace. By January 15, 2010, their collective ownership had swelled to 1,499,139 shares, representing approximately 18.4% of the issued and outstanding stock. On January 28, 2010, the Fife Group's acquisitions totaled 20% of UAHC's common stock. Their holdings thus became "Control Shares" within the meaning of Article XIX of the Restated Articles; all shares acquired 90 days earlier (between October 29, 2009 and January 27, 2010), and those later acquired, constitute a "Control Share Acquisition" under Article XIX of the Restated Articles. Defendant Fife's acquisition binge concluded on February 8, 2010, by which time he had amassed 23.1% of UAHC voting stock or approximately 1.88 million shares. Of those shares, at least 1,570,935 shares are part of a "Control Share Acquisition," and by virtue of Article XIX of the Restated Articles, ineligible to vote on corporate matters. Defendants, however, have decided to run roughshod over UAHC's Restated Articles.

20.     Throughout his rapid accumulation of a control block, defendant Fife engaged in repeated violations of the federal securities laws. SEC regulations require prompt amendment each time a Schedule 13D filer sells or purchases an additional one percent of the Company's voting stock (17 C.F.R. § 240.13d-2(a)). The Fife Group regularly tripped this limit without filing any amendments. As a 10% shareholder, Fife was also obligated to file a Form 3 pursuant to Section 16(a) of the Exchange Act of 1934, 15 U.S.C. § 78p(a), by November 19, 2009 and then update his filing with each share purchase. Fife ignored his legal obligation to make these critical filings until March 22, 2010, when he and his affiliated companies at last filed their initial

8

Form 3. His repeated failure to make timely filings concealed his purchases from the market in brazen violation of the law.

21.      Defendant Fife's illegal conduct continues a pattern of securities law violations. In January 2007, the SEC filed a Complaint in the United States District Court for the Northern District of Illinois against defendant Fife alleging that he had engaged in a securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. On August 9, 2007, the Court entered judgment in favor of the SEC on its securities fraud claim and directed Fife to pay $534,882 in disgorged profits and fines. As set forth below, Fife's disregard for the federal securities laws is ongoing.

UAHC's Vote Buying Agreement with the Fife Group

22.      On January 12, 2010, UAHC announced at last that its 2009 Annual Meeting would be held April 23, 2010, with a record date of February 22, 2010. The announcement, notice and meeting date were timed to postpone a shareholder vote to the maximum limit without giving rise to a shareholder claim under Michigan Law. Chairman Goss promptly went to work to conclude a deal to squelch STEP's opposition slate. On March 19, 2010, UAHC announced that it had entered into a Voting and Standstill Agreement (the "Voting Agreement"), annexed as Exhibit B, with defendant St. George, a Fife-controlled entity that was formed to hold the Fife Group's UAHC shares. The core of the deal is simple: Use UAHC's funds, namely shareholder money, to buy the Fife Group's vote. The Fife Group had a simple goal too, use its power as a control shareholder to extract benefits from UAHC, regardless of the rights of other shareholders. The Voting Agreement is a classic contract between a control shareholder and incumbent directors, in which the control shareholder extracts lucrative benefits at the expense of other shareholders. In return, the incumbents obtain job security, paid for with shareholder funds. It is a remarkable document by any standard of corporate governance.

9

23.     On March 19, 2009, the Fife Group assigned all of its shares to another Fife

entity, defendant St. George Investments, LLC ("St. George").  Defendant St. George thus

acquired Control Shares in a Control Share Acquisition, within the meaning of Article XIX of

the Restated Articles.

24.     In Sections 3.1 and 3.2, defendant St. George agrees to vote the Fife Group shares

"with respect to any matter coming before the shareholders for a vote as recommended by a

majority of the Board." (Ex. B § 3.1)  St. George also grants to the secretary of UAHC an

irrevocable proxy for these shares.  As a result, UAHC's Chairman and his board allies may now

vote the Company's largest block of common stock for their own re-election, or alternatively to

approve any deal that the Board proposes.  Given the size of the Fife Group share block, this

proxy could determine the outcome of any matter calling for shareholder action.

25.     To achieve these results, Chairman Goss and his allies on the UAHC Board

simply used shareholder funds to buy the Fife Group vote.  Here is how the Fife Group gets paid.

First, UAHC has agreed to give the Fife Group the right to "put the Shares" that it owns —

approximately 1.9 million shares representing 23% of UAHC's common stock — to UAHC at

$1.25 per share at any time between October 1, 2011 and March 31, 2012.  (Ex. B § 5.1)  The

Fife Group may also acquire up to 35% of UAHC's outstanding shares, or approximately 1

million more shares, which may be sold to UAHC at the same price.  In other words, the Fife

Group may continue to purchase shares in the open market and obtain a guaranteed profit when it

"puts" them to UAHC.  The publicly available data confirms that the average purchase price for

the Fife Group's current holdings is approximately $1.00 per share.  The put, as now constituted,

guarantees defendant Fife a hefty profit.

26.     The Voting Agreement also contains a call provision for UAHC that is coercive in nature. From the date of signing through June 30, 2011, UAHC may exercise the call at $1.13 per share, buying the Fife Group shares at this price. (Ex. B § 6.1)  Between July 1 and September 30, 2011, the call price increases to $1.25 per share, the same as the put price. As a practical matter, UAHC will be under economic pressure to exercise the call before June 30, 2011, if only to avoid paying more when the put comes due.

27.     The Voting Agreement does more than guarantee defendant Fife a profit. It also insulates him from market risk. On the day that the UAHC Board approved the deal (March 19, 2010), UAHC shares closed at $1.06. While UAHC's other shareholders will suffer if UAHC's share price continues to drop in the wake of the Board's wasteful regime, these losses will not affect the Fife Group. They have a guaranteed buyer at $1.25 per share. In fact, Mr. Fife may profit from a price decline, since he can purchase additional shares and resell them to UAHC for $1.25 per share in the near future. Moreover, UAHC shares trade with little or irregular volume. According to Yahoo Finance, average daily volume for the past 3 months has been a mere 37,858 shares. It would take months for the Fife Group to sell its shares in the open market.

28.     The Voting Agreement contains other harmful provisions that, on their face, exist solely to benefit existing management. In Section 8.1, UAHC may exercise a "Preferred Call" to obtain $600,000 from the Fife Group and in exchange issue preferred stock convertible into common stock. The Certificate of Designation for the preferred stock gives the Fife Group veto power over a series of significant corporate actions, thus ousting common stockholders from control over the fate of UAHC on these matters. (Ex. B at pp. A-2, A-3) Just as important, the "Preferred Call" empowers the Board to place additional shares in the hands of defendant Fife, which can be converted into common stock and then voted at management's discretion. A

11

review of UAHC's financial statement indicates that it has no need to obtain cash, much less a minimal amount like $600,000.  According to its most recent SEC filing, UAHC had $13.1 million in cash and marketable securities, representing more than 80% of total assets.  Even if UAHC did need cash, it could surely borrow without harming the rights of shareholders.

29.     As set forth below, the Voting Agreement violates UAHC's Restated Articles and Michigan law.  Among other things, UAHC will be:  (i) voting a Control Share Acquisition in violation of Article XIX, (ii) buying shares in a greenmail transaction in violation of Article XV, and (iii) engaging in a "business combination" in violation of Article XIX and Article 7A of the Business Corporation Act, § 450.1780.  UAHC's proxy materials also violate federal law.

UAHC's 2009 Annual Meeting

30.     As a public company, UAHC's shares are subject to extensive regulation. Congress and the SEC have designed a regulatory structure governing proxy solicitations, which is designed to ensure that proxy contests be held in a fair and orderly manner, so that stockholders may make an informed decision as to how they will vote their shares. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a) provides that it shall be unlawful for any person to solicit proxies in contravention of the rules and regulations prohibited by the SEC.

31.     Any person who wishes to conduct a proxy solicitation for shareholder votes must therefore comply with the disclosure requirements mandated by the SEC in its Rules 14a-1 through 14a-15, 17 C.F.R. §§ 240.14a-1 to 14a-15.  These requirements protect the interests of shareholders by assuring full and accurate disclosure of material facts regarding the proposals for shareholder vote.  To comply with these rules, among other things, all proxy solicitation materials must be filed with the SEC and must comply with the Exchange Act's anti-fraud provisions, 15 U.S.C. § 78n(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9

12

Defendants' Unlawful Filings and Solicitation

32.     On March 22, 2010, defendant UAHC filed its preliminary proxy material with the SEC (the "UAHC Proxy").  Under SEC regulations, defendant UAHC and its Chairman, defendant Goss, will soon be permitted to disseminate the UAHC Proxy.  The document is now available for UAHC shareholders to review at www.SEC.gov.  The UAHC Proxy is replete with misleading statements and material omissions.  Among other things, the UAHC Proxy fails to disclose that defendant Fife is a "participant" in the UAHC solicitation, within the meaning of SEC regulations.  As a "participant," defendants UAHC and Fife are obligated to make a host of material disclosures, none of which appear in the UAHC Proxy.  More important, if defendant Fife were disclosed as a participant, shareholders would have full knowledge of his checkered past, including a recent judgment for securities fraud obtained by the SEC.

33.     The UAHC Proxy also contains a misleading description of the Voting Agreement between UAHC and the Fife Group.  For example, the UAHC Proxy states the put and call provisions will result in sales at "market price."  The term itself is deceptive, since the price is not "market price."  Significantly, the UAHC Proxy does not disclose that the put price is $1.25 per share, that the call price is $1.13 per share, and that both of these prices are at substantial premiums to the closing price on March 19, 2006, the date on which the Voting Agreement was signed.  The UAHC Proxy also does not disclose that the alleged "market price" is a manipulated figure, obtained by applying a full day's volume to the closing price over an artificial thirty-day period ending March 16, 2010.  This thirty-day period was chosen because it includes several days with large volumes at a closing price of $1.40 per share.  If the same thirty-day period were used through March 19, 2010, the putative "market price" would be dramatically lower, approximately $1.06 per share.

998778-1

34.     The UAHC Proxy also fails to apprise shareholders of the highly material impact
that the Voting Agreement will have upon UAHC's finances.  For example, under the Voting
Agreement, defendant Fife may acquire up to 35% of UAHC common stock, and also receive
more shares through the "Preferred Call."  The tender of all of these shares under a put would
cost UAHC at least $3.57 million, representing more than 30% of its available cash, as of
December 31, 2009.

35.     The UAHC Proxy also contains a misleading description of the "Preferred Call"
under which UAHC may obtain $600,000 from defendant Fife and his companies in exchange
for preferred shares.  Defendants suggest that this transaction provides a benefit to the Company.
In fact, UAHC has no need for cash and UAHC's Board made no effort to explore other means
of raising these funds.

36.     The UAHC Proxy also touts the fact that when its shares trade at $2.21 per share
on a sustained basis, the put and call will end.  These numbers are highly misleading.  They were
plucked from thin air by the Board in order to create the illusion that the put and call might, on
some circumstances, disappear.  In fact, UAHC has no business plan under which its shares
might increase in value.  There is no realistic possibility that UAHC stock will double from the
price level on March 19, 2010, when the Voting Agreement was signed.

37.     The UAHC Proxy also states that Mr. Fife will be available to assist the Company
"in identifying merger and acquisition opportunities without requiring any finders or similar
fees."  The UAHC Proxy further advises that "Mr. Fife and its affiliates have significant
experience with mergers and equity and debt investments in public and private companies."  The
UAHC Proxy, however, fails to advise UAHC shareholders that Mr. Fife is subject to an SEC
order barring him from associating with any investment advisor as well as an SEC judgment

restraining from participating in any form of securities fraud. These highly material facts are necessary to appreciate that the services from the Fife Group are illusory.

38.     The UAHC Proxy does not disclose that the sole purpose behind the Voting Agreement is to obtain control over the key block of shares owned by the Fife Group.

39.     Last, the UAHC Proxy also fails to disclose that, under the Restated Articles of UAHC, the Voting Agreement requires shareholder approval to implement all of its material terms. As set forth in detail below, the put and call are prohibited under the "anti-greenmail" provisions in the Restated Articles, the put and call as well as the "Preferred Call" also constitute a "business combination" requiring shareholder approval; and the "control share acquisition" held by the Fife Group cannot be voted at all, absent shareholder approval. These highly material facts are no where disclosed in the UAHC Proxy.

40.     Although UAHC has amended the UAHC proxy, it remains materially misleading. Among other things, UAHC continues to claim control over the shares held by the Fife Group.

First Claim for Relief
(Violations of Section 14(a) of the Exchange Act and the Rules Thereunder)

41.     Plaintiff repeats the allegation of paragraphs 1 through 40.

42.     Congress and the SEC have designed an extensive regulatory structure governing proxy solicitations, which is designed to ensure that proxy contests be held in a fair and orderly manner so that stockholders may make an informed decision as to how they will vote their shares. Section 14(a) of the Exchange Act provides that it shall be unlawful for any person to solicit proxies in contravention of the rules and regulations prohibited by the SEC.

998778-1

43.     Under the SEC's proxy rules, Defendants are required to provide the disclosures mandated by SEC Rule 14-101, also known as Schedule 14A. These regulations protect shareholders by requiring full disclosure of interested parties, solicitation costs and other material information.

44.     Rule 14a-3, with certain exceptions not applicable here, requires that before the commencement of a proxy solicitation, a written proxy statement containing the information specified in Schedule 14A be filed with the SEC and distributed to each person solicited in connection with any solicitation governed by Section 14(a) of the Exchange Act. Among other things, the proxy statement must contain the information required by Schedule 14A, including: (i) certain information as to the persons making such solicitation; (ii) information as to the interest of such persons in the company, including, but not limited to, information as to share ownership of company securities; (iii) information as to the voting securities of the company and the holders thereof; (iv) financial information with respect to the aforementioned transactions; and (v) whether the proxy is revocable. Each shareholder must be furnished with a written proxy statement.

45.     A key requirement of Schedule 14A is the disclosure of all "participants" in the proxy process, a term that is broadly defined to include:

> (iii)     Any committee or group which solicits proxies, any member of such committee or group, and any person whether or not named as a member who, acting alone or with one or more persons, directly or indirectly takes the initiative, or engages, in organizing, directing or arranging for the financing of any such committee or group;

> (iv)     Any person who finances or joins with another to finance the solicitation of proxies, except persons who contribute not more than $500 and who are not otherwise participants.

998778-1

(v) Any person who lends money or furnishes credit or enters into any other arrangements, pursuant to any contract or understanding with a participant, for the purpose of financing or otherwise inducing the purchase, sale, holding or voting of securities of the registrant by any participant or other persons, in support of or in opposition to a participant; except that such terms do not include a bank, broker or dealer who, in the ordinary course of business, lends money or executes orders for the purchase 01, Ste Of Securities and who is not otherwise a participant;

(vi) Any person who solicits proxies.

SEC Rule 14-101 Item 4, instruction 3(iii)-(vi).  Similarly, Items 4(b)(2) and 5(b)(1) of

Schedule 14A require disclosure of each "participant" in a proxy solicitation and detailed

information regarding those participants.

46.     Defendants have already disseminated materially misleading and illegal proxy

materials to the Company's shareholders and are no doubt planning to disseminate

additional, similar materials as the annual meeting approaches.  Injunctive relief is urgently

required to assure that the Company's shareholders and investors are not misled.

47.     By virtue of the false statements indentified in paragraphs 32-40, defendants

have violated and are continuing to violate Section 14(a) of the Exchange Act and the rules

and regulations promulgated thereunder.

48.     As a result of the above violations of Section 14(a) of the Exchange Act and

the regulations promulgated thereunder, unless Defendants' conduct of ongoing proxy

solicitation is restrained by this Court, the Company, its stockholders and investing public

have been and will continue to be irreparably injured.

49.     Plaintiff has no adequate remedy at law.

### Second Claim for Relief
### (Breach of Article XIX of the Restated Articles)

50.     Plaintiff repeats the allegations of paragraphs 1 through 49.

17

998778-1

51.     UAHC's Restated Articles incorporate by reference the protections of the former

Control Share Acquisitions Chapter of the Michigan Business Corporation Act Article 7B.  They

further provide that these protections shall continue even if the statute is repealed, which in fact

occurred on January 6, 2009.  (*See* Michigan Act No. 402, Public Acts of 2008)  Section 1 of

Article XIX of UAHC's Restated Articles provides:

> Every Control Share Acquisition with respect to Control
> Shares of the Corporation shall be governed by and subject to
> Chapter 7B of the [Michigan Business Corporation] Act, as it may
> be amended from time to time (the "Control Share Acquisitions
> Chapter") as if the Corporation was an 'issuing public
> corporation", as that term is defined under the Control Share
> Acquisitions Chapter.  In the event that the Control Share
> Acquisitions Chapter is repealed in its entirety and no Michigan
> statute governing the subject matter of the Control Share
> Acquisitions Chapter is enacted effective the date of the repeal of
> the Control Share Acquisitions Chapter, every Control Share
> Acquisition with respect to the Corporation shall continue to be
> governed by and subject to that version of the Control Share
> Acquisitions Chapter, or similar statutory provision, then in effect
> on the date of its repeal. For purposes of this Article XIX the terms
> "Control Shares" and "Control Share Acquisition" shall have the
> meanings set forth in the Control Share Acquisitions Chapter.

52.     After repeal of Chapter 7B, effective January 6, 2009, "no Michigan statute

governing the subject matter of the Control Share Acquisitions Chapter [i.e., Chapter 7B of the

Michigan Business Corporation Act] [was] enacted effective the date of the repeal of the Control

Share Acquisitions Chapter …." Therefore, Section 1 of Article XIX of UAHC's Restated

Articles incorporates by reference Chapter 7B, which continues to govern "every Control Share

Acquisition with respect to" UAHC under that version of Chapter 7B "then in effect on the date

of its repeal".

53.     Section 450.1790, part of Chapter 7B, of the Michigan Business Corporation Act

read as follows:

998778-1

(2)     As used in this chapter, "control shares" means shares that, except for this chapter, would have voting power with respect to shares or an issuing public corporation that, when added to all other shares of the issuing public corporation owned by a person or in respect to which that person may exercise or direct the exercise of voting power, would entitle that person, immediately after acquisition of the shares, directly or indirectly, alone or as part of a group, to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors within any of the following ranges of voting power:

(a)     1/5 or more but less than 1/3 of all voting power.

(b)     1/3 or more but less than a majority of all voting power.

(c)     A majority of all voting power.

54.     The Fife Group owns 23% of all of the issued and outstanding shares of the common stock of UAHC, i.e. more than 1/5 but less than 1/3 of all voting power of UAHC. These defendants therefore own "Control Shares" within the meaning of Article XIX of the UAHC Restated Articles.

55.     In addition, defendants Fife and Iliad Research and Trading, L.P. assigned all of their UAHC shares to defendant St. George Investments, LLC ("St. George") on March 19, 2010. As a result, St. George acquired "Control Shares" that date, in a "Control Share Acquisition."

56.     The acquisition in which St. George and/or the Fife Group acquired their "Control Shares" constitutes a "Control Share Acquisition" within the meaning of Article XIX, incorporating former § 450.1791(1), part of Chapter 7B, of the Michigan Business Corporation Act.  Moreover, "shares ... acquired within a 90-day period ... are considered to have been acquired in the same acquisition" and are also part of the Control Share Acquisition.  *See* § 450.1791(2), part of Chapter 7B, of the Michigan Business Corporation Act,

57.     Under former Section 450.1791(2), of the Michigan Business Corporation Act, "control shares of an issuing public corporation acquired in a control share acquisition have only such voting rights as conferred by section 798." Section 798, i.e., § 450.1798, part of Chapter 7B, of the Michigan Business Corporation Act, provided that "control shares of an issuing public corporation acquired in a control share acquisition have the same voting rights as were accorded the shares before the control share acquisition only to the extent granted by resolution approved by the shareholders of the issuing public corporation." Shareholder approval required both "a majority of the votes cast by the holders of shares entitled to vote thereon", and "[a] majority of the votes cast by the holders entitled to vote and a majority of the votes cast by the holders of shares of each class or series entitled to vote as a class or series, excluding all interested shares." (See § 450.1798)

58.     No shareholder approval by majority vote has been given to the Fife Group's Control Share Acquisition.

59.     By reason of the foregoing, all shares of the common stock of UAHC assigned to defendant St. George cannot be voted, including in the upcoming election of members of the Board of Directors of UAHC. Alternatively, all shares acquired by the Fife Group which caused it to own 1/5 or more of the issued and outstanding shares of the common stock of UAHC and all shares of UAHC's common stock the Fife Group purchased within the 90-day period prior thereto cannot be voted, including in the upcoming election of members of the Board of Directors of UAHC. These represent 1,570,935 shares owned by the Fife Group (the "Non-Voting Control Shares").

998778-1

60.     Pursuant to Section 3.23 of Article III of the Voting Agreement, the Fife Group purports to give UAHC's Secretary an irrevocable proxy to vote *all* shares of the common stock of UAHC that are owned by the Fife Group, including the Non-Voting Control Shares.

61.     Under Article XIX, UAHC and its Secretary cannot vote any of Fife Group's UAHC shares in the upcoming election of members of the Board of Directors of UAHC. Alternatively, they cannot vote the Non-Voting Control Shares held by the Fife Group at the shareholders meeting.

62.     UAHC and its Secretary have stated their intention to vote all shares owned by the Fife Group in favor of election of the slate of candidates proposed by management of UAHC, all in breach of Section 1 of Article XIX, of UAHC's Restated Articles.

63.     Plaintiff STEP will suffer irreparable harm unless UAHC and its Secretary are preliminarily and permanently enjoined from breaching Section 1 of Article XIX of UAHC's Restated Articles by voting the Fife Group's UAHC shares.

64.     Plaintiff STEP has no adequate remedy at law.

65.     Plaintiff STEP is entitled to a preliminary injunction and a permanent injunction enjoining UAHC and its Secretary from violating Section 1 of Article XIX of UAHC's Restated Articles by voting the Fife Group's Control Share Acquisition at the upcoming annual meeting.

Third Claim for Relief<br>(Breach of Article XV of the Restated Articles)

66.     Plaintiff repeats the allegations of paragraphs 1 through 65.

67.     Article XV of the Restated Articles contains extensive prohibitions on greenmail transactions, i.e., the Company's preferential purchase of shares from large shareholders. Section 1 of Article XV of UAHC's Restated Articles provides:

> The Corporation shall not purchase, directly or indirectly, at a price above Market Price (as hereinafter defined), any shares

998778-1

of any class, now or hereafter authorized, of the Corporation's capital stock from any Selling Stockholder (as hereinafter defined) or any Affiliate or Associate (as hereinafter defined) of a Selling Stockholder, unless such purchase has been approved in advance by an affirmative vote of the holders of at least a majority of the voting power of all of the outstanding shares of capital stock of the Corporation held by stockholders other than the Selling Stockholder or any Affiliate or Associate of the Selling Stockholder who is, or whose Affiliate is, a party to the transaction described in this Section 1 being voted upon, voting together as a single class.

68.     Section 2(a) of Article XV of UAHC's Restated Articles defines "Selling Shareholder" for purposes of Article XV in pertinent part as follows:

"Selling Stockholder" shall mean any Person (other than the Corporation or any Subsidiary (as hereinafter defined)) who or which proposes to sell to, or cause to be acquired by, the Corporation all or any portion of the capital stock of the Corporation then beneficially owned, directly or indirectly, by such Person and who or which:

(i)     is the beneficial owner, directly or indirectly, of 3% or more of the class of capital stock to be acquired....

69.     Defendants John Fife and the Fife Group are a "Selling Shareholder" within the meaning of that term for purposes of Article XV of the Restated Articles because they own and have at all relevant times owned twenty-three percent (23%) of the issued and outstanding shares of the common stock of UAHC, which is more than three percent (3%) "of the class of capital stock to be acquired" by UAHC.

70.     Section 2(d) of Article XV of UAHC's Restated Articles defines "Market Price" for purposes of Article XV in pertinent part as follows:

"Market Price" shall mean the average closing sale price during the 30-day period immediately preceding the date in question of a share of the Corporation's capital stock on the principal United States securities exchange registered under the 1934 Act on which such stock is listed, or, if such stock is not listed on any such exchange, the average closing bid quotation

22

> with respect to a share of such stock during the 30-day period immediately preceding the date in question on the National Association of Securities Dealers, Inc. Automated Quotations System or any comparable system then is use, or if no such quotations are available, the fair market value on the date in question of a share of such stock as determined in good faith by a majority of the directors.

71.     Under the put granted to the Fife Group in Section 5.1 of the Voting Agreement, the Fife Group  has the right to require UAHC to purchase from the Fife Group "any or all of the Common Shares and Conversion Shares then held by the Fife Group … for an aggregate purchase price equal to the Put Price,"  without any advance approval by an affirmative vote of the holders of a majority of the voting power of all of the issued and outstanding shares of UAHC common stock held by persons other than the Fife Group.

72.     The Voting Agreement breaches Section 1 of Article XV of UAHC's Restated Articles because it purports to require UAHC to purchase shares of UAHC common stock from the Fife Group, a Selling Shareholder within the meaning of Article XV, without regard to the Market Price, as defined in Section 2(d) of the Restated Articles and without any advance approval "by an affirmative vote of the holders of  a majority of the voting power of all of the outstanding shares of capital stock of the Corporation held by other than the Selling Stockholder…."

73.     The call option in Section 6.1 of the Voting Agreement is also illegal under Article XV, as it permits the Board to purchase the Fife Group's shares at $1.13 per share, or $1.25 per share, irrespective of the "Market Price" as defined in Section 2(d) of Article XV, of the Revised Article.

74.     The put and call are also illegal under Section 3 of Article XV of the Restated Articles.  This provision states:

998778-1

> In the event that a purchase of shares of any capital stock
> by the Corporation is subject to and governed by paragraph 1 of
> this Article XV and such capital stock is listed on a national
> securities exchange, including the National Association of
> Securities Dealers, Inc. Automated Quotations Systems, the
> purchase of such capital stock, in addition to satisfying all other
> requirements of this Article XV, shall be made on the open market
> and not as the result of a privately negotiated transaction.

75.     The put and call, on their face, will not be open market transactions.

76.     Plaintiff STEP will suffer irreparable harm unless UAHC is preliminarily and permanently enjoined from breaching its Restated Articles through the Voting Agreement.

77.     Plaintiff STEP has no adequate remedy at law.

78.     Plaintiff STEP is entitled to a preliminary injunction and a permanent injunction enjoining UAHC from exercising any rights under the Voting Agreement.

Fourth Claim for Relief
(Violation of Michigan Business Corporation Act § 450.1780)

79.     Plaintiff STEP repeats the allegations of paragraphs 1 through 78.

80.     Article 7A of the Business Corporation was enacted to protect corporations from being coerced into transactions with "interested shareholders."  Section 450.1778(2) of the Michigan Business Corporation Act defines "Interested Shareholder" as follows:

> "Interested Shareholder" means any person, other than the
> corporation or any subsidiary who is either:
>
> (a) The beneficial owner, directly or indirectly, of 10% or more of
> the voting power of the outstanding shares of the corporation ....

81.     Defendants Fife and the Fife Group constitute an "Interested Shareholder" under Article 7A.

82.     Section 450.1776 of the Business Corporation Act defines "Business Combination" for purposes of Chapter 7A of the Act as follows:

24

     (5)    "Business combination" means any 1 or more of the following:

***

     (b)    Any sale, lease, *transfer, or other disposition*, except in the usual and regular course of business, in 1 transaction or a series of transaction in any 12-month period, to any *interested shareholder* or any affiliate of any interested shareholder, other than the corporation or any of its subsidiaries, of any assets or the corporation or any subsidiary having, measured at the time the transaction or transactions are approved by the board of directors of the corporation, an aggregate book value as of the end of the corporation's most recently ended fiscal quarter of 10% or more of its net worth.

83.    Subject to exceptions not applicable here, Section 450.1780 of the Business Corporation Act, which is in Chapter 7A of the Act, requires as follows:

In addition to any vote otherwise required by law or the articles of the corporation, a business combination shall require an advisory statement from the board of directors and approval by an affirmative vote of both of the following:

     (a)    Not less than 90% of the votes of each class of stock entitled to be cast by the shareholders of the corporation.

     (b)    Not less than 2/3 of the votes of each class of stock entitled to be cast by the shareholders of the corporation other than voting shares beneficially owned by the interested shareholder who is, or whose affiliate is, a party to the business combination or an affiliate or associate of the interested shareholder.

84.    The put and call arrangements in the Voting Agreement each constitute a "business combination" because each involves a "sale, …transfer or other disposition, [not] in the usual and regular course of business, …to [an] interested shareholder …of … assets of the corporation … having, measured at the time the transaction or transactions are approved by the board of directors of the corporation, an aggregate book value as of the end of the corporation's most recently ended fiscal quarter of 10% or more of its net worth."

25

85.     According to UAHC's Form 10-Q for the quarter ending December 31, 2009, the Company's net worth was $12,533,000, representing the excess of its recorded assets over recorded liabilities.  The put and call options require UAHC to dispose of at least $2,108,493 (1,882,583 x $1.12) in cash, and as much as $3,560,332 if the Fife Group acquires 35% of UAHC's common stock.  In fact, UAHC is required to reserve over $2 million to honor the Fife Group's put.

86.     The put and call options have not been approved "by an affirmative vote of both of the following:

> (a)     Not less than 90% of the votes of each class of stock entitled to be cast by the shareholders of the corporation.

> (b)     Not less than 2/3 of the votes of each class of stock entitled to be cast by the shareholders of the corporation other than voting shares beneficially owned by the interested shareholder who is, or whose affiliate is, a party to the business combination or an affiliate or associate of the interested shareholder.

87.     Section 8.1 of the Voting Agreement also grants UAHC a "Preferred Call" through which UAHC may require the Fife Group to advance $600,000 to UAHC in exchange for Preferred Stock in an amount equal to 600,000 divided by the Volume Weighted Average Price ("VWAP") for UAHC's common stock for the thirty calendar days immediately prior to the date of issuance of the shares.

88.     A "Business Combination" under Section 450.1776 of Michigan's Business Corporation Act also includes:

> (c) The issuance or transfer by the corporation, or any subsidiary, in 1 transaction or a series of transactions, or any equity securities of the corporation or any subsidiary which have an aggregate market value of 5% or more of the total market value of the outstanding shares of the corporation to any interested shareholder..., other than the corporation or any of its subsidiaries....

26

998778-1

89.     As set forth in § 450.1778 of the Michigan Business Corporation Act, the term "equity security" includes "[a]ny put, call, … or other option or privilege of buying an equity security from or selling an equity security to another without being bound to do so."

90.     On March 19, 2009, the date that UAHC's Board approved the Voting Agreement, the aggregate market value for its common stock was $8,626,177 ($1.0 x 8,137,903 shares). The put, call and Preferred Call each involve the issuance of UAHC's equity securities with an aggregate market of 5% or more of the total market value of UAHC's shares, without any approval of UAHC's shareholders under Section 450.1780 of the Business Corporation Act.

91.     Plaintiff STEP will suffer irreparable harm unless defendants are preliminarily and permanently enjoined from violating § 450.1780 of Michigan's Business Corporation Act through the implementation of the Voting and Standstill Agreement.

92.     Plaintiff STEP will suffer irreparable harm unless defendants are preliminarily and permanently enjoined from enforcing any rights under the Voting and Standstill Agreement.

93.     Plaintiff STEP has no adequate remedy at law.

94.     Plaintiff STEP is entitled to a preliminary injunction and a permanent injunction enjoining defendants UAHC from invoking or utilizing the Voting Agreement.

Fifth Claim for Relief<br>(Breach of Article XIX of the Restated Articles)

95.     Plaintiff STEP repeats the allegations of paragraphs 1 through 94.

96.     In Article XIX, the Restated Articles of UAHC incorporate by reference Article 7A of the Michigan Business Corporation Act, thereby assuring UAHC shareholders even greater protection. As with the former Article 7B of the Business Corporation Act, the Restated Articles provide that the incorporation by reference will survive even if Article 7A were repealed.

27

998778-1

97.     For all the reasons set forth in the Fourth Count above, defendants are also engaged in a violation of Article XIX of the Restated Articles.

98.     Plaintiff STEP will suffer irreparable harm unless defendants are preliminarily and permanently enjoined from violating Article XIX of the Restated Articles through the implementation of the Voting Agreement.

99.     Plaintiff STEP will suffer irreparable harm unless defendants are preliminarily and permanently enjoined from enforcing any rights under the Voting Agreement.

100.    Plaintiff STEP has no adequate remedy at law.

101.    Plaintiff STEP is entitled to a preliminary injunction and a permanent injunction enjoining defendants UAHC from invoking or utilizing the Voting and Standstill Agreement.

Sixth Claim for Relief
(Breach of Fiduciary Duty by Vote Buying)

102.    Plaintiff STEP repeats the allegations of paragraphs 1 through 101.

103.    Defendant Goss, as a member of the Board of Directors of UAHC, owed and owe a fiduciary duty of loyalty to UAHC and all of its shareholders to act in good faith and in the best interest of UAHC and all of its shareholders, and not to serve their personal interests.

104.    Defendant Goss has breached their duty of loyalty to UAHC and all of its shareholders by causing UAHC entering into an agreement to buy the votes of all shares of UAHC common stock, held by the Fife Group.

105.    The Voting Agreement was not entered into for any legitimate business purpose. The process by which UAHC's Board adopted the agreement was not intrinsically fair, as the Board made no determination that any "threat" was presented to UAHC or that the Voting Agreement was a reasonable response to any such "threat." The Voting Agreement simply represents a preferential allocation of UAHC assets to a control shareholder, to the detriment of

all other shareholders and to the enrichment of the incumbent Board. Accordingly, the Voting Agreement violates public policy and is illegal under Michigan law.

106.    Plaintiff STEP will suffer irreparable harm unless defendants Goss and UAHC, are preliminarily and permanently enjoined from implementing the Voting Agreement.

107.    Plaintiff STEP has no adequate remedy at law.

Seventh Claim for Relief
(Adjudicated by Order dated April 9, 2010)

108.    Plaintiff STEP repeats the allegations of paragraphs 1 through 107.

109.    On April 6, 2010, defendants UAHC and Goss announced that UAHC's 2009 annual meeting would take place on July 30, 2010, not April 23, 2010.

110.    More than fifteen months has passed since the 2008 annual meeting, held November 7, 2008.

111.    Pursuant to Section 402 of the Michigan Business Corporation Act, this Court should set the date and place for the meeting, as well as determine the proper notice.

112.    To protect UAHC's shareholders, the Court should direct the Company to keep the current record date (February 22, 2010) and to have its 2009 annual meeting on April 23, 2010. Moreover, at any such meeting, the shareholders present in person or by proxy and having voting powers should constitute a quorum for transaction of the business designated in the order.'

113.    Plaintiff STEP will suffer irreparable harm unless defendants Goss and UAHC, are preliminarily and permanently enjoined from postponing the 2009 annual meeting.

114.    Plaintiff STEP has no adequate remedy at law.

115.    Plaintiff STEP is entitled to a preliminary injunction and a permanent injunction enjoining defendants from postponing the 2009 annual meeting.

998778-1

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Preliminarily and permanently enjoining Defendants and their respective servants, employees, agents and attorneys and all persons acting on their behalf or in concert or participation with them, from directly or indirectly: violating Section 14(a) of the 1934 Act and the rules and regulations promulgated thereunder; soliciting and delivering any proxy, consent or authorization with respect to UAHC's securities; soliciting, acquiring, or attempting to acquire any securities of UAHC; voting in person or by proxy any securities of UAHC, until such time as they have complied with all requirements of the Exchange Act, including, without limitation the filing of a complete and accurate Schedule 14A and definitive proxy material fully complying with the relevant provisions of the Exchange Act and the rules and regulations promulgated thereunder, and the shareholders of UAHC have been afforded a sufficient opportunity to review such complete and accurate filing so as to render an informed decision thereon.

B.     Preliminarily and permanently enjoining defendants and their servants, employees, agents and attorneys and all persons acting on his behalf or in concert or participation with them, from making any false or misleading statements in any proxy materials, regarding UAHC.

C.     Preliminarily and permanently enjoining defendants from voting any Control Share Acquisition owned or controlled by either defendant St. George or defendant John Fife, including without limitation, all shares acquired after October 28, 2009, or at least 1,570,935 shares.

D.    Preliminarily and permanently enjoining defendants from implementing the Voting and Standstill Agreement dated March 19, 2010, including, without limitation the voting trust and irrevocable proxy established thereunder.

E.    Directing UAHC to holds its 2009 Annual Meeting on April 23, 2010 with a record date of February 22, 2010, and further that the shareholders present in person or by proxy and having voting powers should constitute a quorum for transaction of the business designated in the order.

F.    Awarding Plaintiff costs, disbursements, attorney's fees, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/    J. Adam Behrendt (P58607)
        Michael B. Lewiston (P16643)
Bodman LLP
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
jbehrendt@bodmanllp.com
mlewiston@bodmanllp.com
Attorneys for Plaintiff Strategic Turnaround
Equity Partners, L.P. (Cayman)

Dated: June 17, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2010 I electronically filed the foregoing papers with the Clerk of the Court using the ECF System, which will send notification of such filing to all parties of record.

/s/ J. Adam Behrendt
J. Adam Behrendt (P58607)
201 West Big Beaver Road, Suite 500
Troy, Michigan 48084
(248) 743-6000
jbehrendt@bodmanllp.com

998778-1