UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRATEGIC TURNAROUND EQUITY
PARTNERS, L.P. (CAYMAN),

      Plaintiff,

                              Case No. 10-cv-11305

v.

                              HONORABLE STEPHEN J. MURPHY, III

JOHN FIFE, UNITED AMERICAN
HEALTHCARE CORPORATION,
THOMAS GOSS, ST. GEORGE
INVESTMENTS, LLC., FIFE TRADING,
INC., ILIAD RESEARCH AND TRADING,
L.P., and ILIAD MANAGEMENT LLC.,

      Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS
GOSS AND UAHC'S MOTION TO DISMISS, DISMISSING
<u>REMAINDER OF ACTION FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

      In this corporate dispute, Plaintiff Strategic Turnaround Equity Partners, L.P. ("Strategic") claims that Defendants United American Healthcare Corporation ("UAHC"), Thomas Goss, St. George Investments, LLC ("St. George"), John Fife, Fife Trading, Inc., Iliad Research and Trading, L.P., and Iliad Management, LLC, have, though their business dealings violated UAHC's Articles of Incorporation, as well as various Michigan statutes. Strategic also claims that Defendants have violated section 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78a, *et. seq.*

      Since the filing of this action on March 31, 2010, there has been extensive docket activity and the following motions remain pending before the Court: Strategic's motion for a preliminary injunction, Defendants' two separately filed motions to dismiss, and Strategic's motion for summary judgment.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

A. The Parties

Strategic is a limited partnership investment fund organized under the laws of the Cayman Islands. Defendant UAHC is a Michigan corporation operating in the area of healthcare management. Its shares are traded on the NASDAQ capital markets exchange. Defendant Thomas Goss is Chairman of UAHC's board of directors, a position he has held since November 2008. Defendant John Fife is an Illinois resident affiliated with Defendants Fife Trading, Inc., Iliad Research and Trading, L.P., and Iliad Management, LLC, collectively referred to herein as the "Fife Group." Defendant St. George Investments, LLC is a limited liability company that is affiliated with John Fife.

B. Pre-suit Background

Strategic has owned stock in UAHC since 2005 and over the last few years has slowly been increasing its ownership percentage. On July 30, 2009 Strategic notified UAHC that it intended to nominate three individuals to stand for election as directors at the 2009 annual meeting. Strategic has complied with all federal and state requirements in nominating these persons for directorship.

On November 24, 2009, the Fife Group filed initial Schedules 13D with the SEC, disclosing their collective ownership of 838,833 shares of UAHC common stock, representing approximately 10.31% of the issued and outstanding shares of UAHC. By acquiring at least 10% of UAHC's common stock, the Fife Group collectively became an "Interested Shareholder" under both Article XVI of UAHC's Articles of Incorporation and Chapter 7A of the Business Corporations Act, Mich. Comp. Laws § 450.1780. By January 28, 2010, the Fife Group's acquisition exceeded 20% of UAHC's common stock. By

2

February 8, 2010 the Fife Group owned 23.1% of UAHC's voting stock, or approximately 1.88 million shares.

C. The Standstill Agreement

On March 19, 2010, the Fife Group assigned its beneficial ownership in all of its UAHC shares to their affiliate St. George Investments, LLC, effective March 11, 2010.  UAHC and St. George then entered into a Voting and Standstill Agreement ("Standstill Agreement") under which St. George agreed to cause the Fife Group to withdraw its slate of nominees to UAHC's board and to vote in favor of the candidates nominated by UAHC instead.  St. George agreed to customary standstill provisions for a period of 18 months.  St. George also agreed to cause the Fife Group to issue an irrevocable proxy to the UAHC board for all matters coming before the shareholders for a vote, including the upcoming director election at the annual meeting.  St. George also agreed to not acquire ownership of common shares of UAHC representing more than 35% of UAHC's issued and outstanding common stock until March 31, 2012, unless earlier terminated by exercise of the "put" (discussed below) or in the event of default of the agreement.

Under the Standstill Agreement, UAHC has the right to purchase all of St. George's shares (the "call"), and St. George has the right to require UAHC to purchase some or all of its shares (the "put").  The purchase price of shares bought and sold pursuant to the put and call are determined according to detailed provisions in the standstill agreement.  St. George also granted to UAHC the right at any time after May 1, 2010 to require St. George to invest $600,000 in UAHC (the "capital call").  The specifics of the put, the call, and the capital call need not be recounted in detail here.

D.   St. George's Sale of its Shares to the Dove Foundation

On June 4, 2010, St. George sold 1,603,647 of its UAHC common stock to the Dove Foundation, an irrevocable trust organized under the State of Illinois.  As a result, the Dove Foundation now owns 19.64% of UAHC, and St. George owns 3.42%.  According to Defendants, the sale was an arms length transaction for real and valuable consideration. Neither Fife nor any of his affiliates are trustees or beneficiaries of the Dove Foundation; neither Fife nor any affiliate has any right to direct the Foundation's ownership or control of the UAHC shares; and neither Fife nor any affiliate has any reversionary rights, options or security interests in the shares.  The Dove Foundation entered into an agreement to join the Standstill Agreement between St. George and UAHC, and agreed to vote in accordance with the recommendations of UAHC's board on all issues brought before the shareholders until at least October 1, 2011 unless UAHC defaults on the agreement.

UAHC's 2009 annual meeting, at which Strategic is attempting to prevent the Fife Group's shares from being voted, was originally scheduled for April 23, 2010, but was later rescheduled for July 30, 2010, and has finally been set for June 29, 2010.

D.  Procedural History

1.  Complaint

On March 31, 2010, Strategic filed its complaint asserting six counts: 1) false or misleading proxy statements in violation of the Securities Exchange Act; 2) breach of Article XIX of UAHC's Articles of Incorporation, insofar as the Articles incorporate now-repealed Chapter 7B of the Michigan Business Corporation Act; 3) Breach of Article XV of UAHC's Articles of Incorporation, insofar as the Articles  prohibit "greenmail transactions;" 4) Violation of the Michigan Business Corporation Act § 450.1780; 5) Breach of Article XIX of UAHC's Articles of Incorporation, insofar as the Articles incorporate Chapter 7A of the

4

Michigan Business Corporation Act to prohibit certain business combinations; and 6) breach of fiduciary duty.  Through these counts, Strategic asks the Court to: A) enjoin Defendants from violating the Securities Exchange Act by making false or misleading statements in any proxy materials; B) enjoin Defendants from voting any shares obtained in a "control share acquisition" -- as that term is defined by UAHC's Articles of Incorporation -- by the Fife Group and St. George; and C) enjoin Defendants from implementing the Standstill Agreement, including the voting trust and irrevocable proxy.

    2.  <u>Motions</u>

    Five days after filing its complaint, Strategic filed its emergency motion for a temporary restraining order ("TRO") seeking to prevent UAHC, through its board of directors, from voting St. George's shares pursuant to the Standstill Agreement and irrevocable proxy at the then-impending director election.

    UAHC later rescheduled its annual meeting for July 30, 2010 and filed a motion seeking to adjourn the hearing on the TRO, citing the lack of any emergency now that the meeting had been rescheduled for a later date.  One of the reasons given for the rescheduling was that UAHC had amended its preliminary proxy statements and there was not sufficient time to have the definitive proxy statement sent to shareholders before the April 23, 2010 meeting.  Strategic responded by filing an amended complaint adding one additional count -- count seven -- seeking to compel UAHC's annual meeting on April 23, 2010.  Strategic then moved in a separate filing to compel the annual meeting, essentially seeking summary judgment on the added count.  The Court granted UAHC's motion to adjourn the meeting and denied Strategic's motion to compel the meeting, finding that the Court did not have jurisdiction to compel the annual meeting, and that even if it did, it would

not compel the meeting because the Michigan statute that provide a court with the authority to compel an annual meeting did not apply in this case.

In lieu of answering the complaint, Defendants UAHC and Thomas Goss, and Defendants Fife Group, each of the two groups represented by different counsel, filed separate motions to dismiss the amended complaint on overlapping grounds.  One week later, Plaintiff moved for summary judgment on counts two through five of its complaint.

After the briefing on all the motions was complete, UAHC filed a supplemental brief bringing to the Court's attention that St. George had sold to the Dove Foundation a vast majority of its shares and claiming that since these shares have been acquired by a new owner, they were not longer "control shares" and have full voting power in the hands of the new owner, even if they might not in the hands of St. George.

## DISCUSSION

As stated above, all parties in this action have filed various dispositive motions that remain pending before the Court.  The Court will take up he motions to dismiss first, as they raise threshold issues.

A.  Defendants UAHC and Goss's Motion to Dismiss

Defendants UAHC and Goss have moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss, among others, count one.  Count one alleges violations of Section 14(a) of the Securities Exchange Act and the rules promulgated thereunder.  The remaining defendants have joined in this motion.

1.  Rule 12(b)(6) Standard

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . .  be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 557 (2007) (citations omitted).  Accordingly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.  *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted).

In assessing a motion brought pursuant to Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party.  *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  Although the pleading standard is a liberal one, bare assertions of legal conclusions do not enable a complaint to survive a rule 12(b)(6) motion.  *In re DeLorean Motor Co.*, 991 F. 2d 1236, 1240 (6th Cir. 1993). The Court will not presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation.  *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'"  *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).  Therefore, the Court will grant a motion to dismiss pursuant to Rule 12(b)(6) only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.  The Supreme Court recently summarized a district court's duties in ruling on a Rule 12(b)(6) motion:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

2. Analysis

Section 14(a) prohibits a person from acting in violation of any rules the SEC may eventually promulgate with respect to proxy solicitations. *See* 15 U.S.C. § 78n(a). The SEC's Rule 14a-9 prohibits any person from making a solicitation by means of any proxy statement containing a statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary to make the statement therein not false or misleading. 17 C.F.R. § 240.14a-9(a); *see also Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 290-91 (2d Cir. 2006) ("Rule 14a-9 provides that proxy statements are not to be 'false or misleading with respect to any material fact.' "). The Supreme Court has held that there exists an implied private right of action for the breach of section 14(a), as implemented by SEC Rule 14a-9. *See Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1087 (1991).

Obviously, then, to state a valid claim under section 14(a), a plaintiff must allege that a proxy statement contains a material misrepresentation or omission that renders the proxy materially misleading. A plaintiff alleging securities fraud under the Securities Exchange Act of 1934 must comply with the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), which requires that any securities fraud claim brought under the Securities Exchange Act to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). If these requirements are not met, a court must dismiss the count. *Id.* § 78u-4(b)(3)(A). A misrepresentation or omission is "material" if there is a substantial likelihood

that a reasonable shareholder would consider it important in deciding how to vote.  *See TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

In its original complaint, Strategic alleged that numerous statements in UAHC's preliminary proxy statement were false or misleading.  UAHC subsequently amended its preliminary proxy statements and submitted them to the SEC for approval.  After filing these superseding preliminary proxy statements, Strategic filed its first amended complaint ("FAC")[1] in which it simply added the following allegation in count one:

> 40.  Although UAHC has amended the UAHC proxy, it remains materially misleading.  Among other things, UAHC continues to claim control over the shares held by the Fife Group.

FAC ¶ 40.

In their motion to dismiss, UAHC and Goss claim that the only allegation aimed at the amended proxy materials (¶ 40) is insufficient to state a plausible claim of securities fraud.  They claim that ¶ 40 consists only of a legal conclusion that the Court should disregard under *Twombly and Iqbal*.  Strategic agrees that "after the initial complaint, UAHC corrected much of its misleading filing with the SEC," but claims that not all of the false or misleading statements were removed.  Docket no. 39, at 7.  Specifically, Strategic contends that the amended proxy statement "still contends that UAHC holds an irrevocable proxy to vote St. George's 23.1% block of the issued and outstanding shares of UAHC's common stock." *Id.*

The Court agrees with Defendants that UAHC's preliminary proxy statement was scrubbed of any false or misleading statements so count one must be dismissed.  The first sentence of the allegation at ¶ 40 -- "Although UAHC has amended the UAHC proxy, it

---

[1] Strategic called its first amended complaint a "supplemental amended complaint."

remains misleading" -- is a legal conclusion that the Court will disregard on a motion to dismiss.  *See Iqbal*, 129 S. Ct. at 1950 ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").  The rest of the allegation does not sufficiently demonstrate which statements in the preliminary proxy statement are false or misleading, or the reasons why such statements are false or misleading.  Strategic has failed to meet the pleading requirements under the PSLRA, which requires that securities fraud claims specify each statement that is misleading and the reasons why the statement is misleading.  *See* 15 U.S.C. §§ 78u-4(b)(1).

Strategic argues that the second sentence in paragraph 40 sufficiently identifies the misleading statement in UAHC's preliminary proxy statement.  The second sentence reads, "Among other things, UAHC continues to claim control over the shares held by the Fife Group."  The preliminary proxy statement does indeed state that St. George owns 23.13% of UAHC's common stock, and that pursuant to the Standstill Agreement, St. George has agreed to vote all of its shares as recommended by the Board.  Docket no. 20, Ex. A, at 19-21.  This statement, however, is not false; it is true.  In fact, in paragraph 3 of the complaints, Strategic itself states "On March 19, 2010, UAHC at last disclosed its 'collaboration' with defendant Fife – a Voting and Standstill Agreement in which Fife grants to UAHC's incumbent Board an irrevocable proxy to vote his key block of shares at the Annual Meeting."  SAC ¶ 3.  And at paragraph 24: "St. George also grants to the secretary of UAHC an irrevocable proxy for these shares."  *Id.* ¶ 24.  Accordingly, UAHC's statement that is has authority to vote St. George's shares is not false.

Strategic alternatively argues that the statement is materially misleading.  It states that the statement falls squarely into one of the examples of materially misleading statements provided in SEC Rule 14a-9.  Specifically, the note following Rule 14a-9 provides:

> The following are some examples of what, depending upon particular facts and circumstances, may be misleading within the meaning of this section.
> ...
> (d) Claims made prior to a meeting regarding the results of a solicitation.

17 C.F.R. § 240.14a-9.

In addition to the fact that the note recognizes that whether a statement is misleading depends on particular facts and circumstances, UAHC's irrevocable proxy statement does not fit this example because the proxy to vote St. George's shares was not the result of any proxy solicitation.  Rather, it was the result of the Standstill Agreement.  Recognizing this distinction, Strategic relies on what it claims is the rationale behind the example in the rule: the so called "bandwagon effect."  That is, the possibility that statements in the proxy statement about the result of a proxy solicitation may deter shareholders from participating in a contest under the false impression that the result of the vote is a foregone conclusion so their vote would be futile.  Shareholders would then blindly grant a proxy to the favored proxy solicitor over any underdogs.

While this appears to be a reasonable theory of the reasons behind the example in Rule 14a-9, the Court finds that the potential for the statement in this case to be misleading is minimal.  That is, it is not plausible that a reasonable shareholder would vote its shares one way or another based simply on the fact that UAHC has the irrevocable authority to vote St. George's shares.  Although 23.13% may be a not insignificant percentage of UAHC's shares, that still leaves nearly 80% of UAHC's outstanding shares that may be voted by the remaining shareholders in a different manner.  The complaint contains no

allegations about statements in the preliminary proxy statement regarding how the remaining shares will likely be voted at the meeting.  Indeed, it is entirely possible that the fact that UAHC has gained so many shares from one group of shareholders *may even discourage* potential shareholders from giving UAHC a proxy to vote at the board election. Such shareholders may vote their shares themselves, or they may even grant a proxy to Strategic.

Strategic cites *Gould v. Am. Hawaiian Steamship Co.*, 331 F. Supp. 981 (D. Del. 1971) in support.  In *Gould*, a class of shareholders of a recent merger of two corporations challenged the merger claiming that a proxy solicitation used in connection with the merger shareholder vote was false or misleading as a matter of law.  The proxy statement at issue stated that pursuant to various agreements between certain shareholders and one of the merging corporations, the shareholders "have agreed to vote for the merger."  *Id.* at 985. The court concluded that the language "have agreed" connoted a legal commitment binding the shareholders and that the purchase agreements in no way legally required the shareholders to vote for the merger.  *Id.* at 990.  The statement in the proxy, therefore, was false or misleading.  The court next concluded that the statements were material, rejecting the defendant's argument that, at most, other shareholders would conclude the merger was a foregone conclusion and not vote at all, thereby making the merger approval even more difficult.  *Id.* at 991.  The court recognized that at least one effect of the statement that 64% of the shareholders had agreed to vote in favor of the merger when only a 67% vote was required for the merger's approval, was that the average shareholder would not give the proxy statement careful consideration because the merger would appear to be a foregone conclusion.  The court stated:

> Since § 14(a) seeks to insure the informed exercise of the franchise, any misstatement which makes the exercise seem futile and which diverts shareholder attention from careful analysis of a proxy statement for purposes of exercising the right to vote would certainly be a material defect.

*Id.* at 992.

As counsel for Strategic acknowledged at the hearing on the motions, whether statements are materially misleading depends on the facts and circumstances of each case. The facts and circumstances in this case distinguish it from *Gould* and do not require the same outcome. Specifically, the fact that the proxy statement in *Gould* stated that 64% of shareholders had agreed to vote for the merger, where only 67% was required to approve the merger, distances *Gould* from this case. Strategic's complaint is devoid of any allegations regarding the percentage required to elect the various directors at the annual meeting or indications of how any other shares were likely to be voted. Claiming in a proxy statement that 23.13% of the total shares will be voted vote one way, without more, is not materially misleading to reasonable investors. So while the bandwagon effect may in some situations render a statements in a proxy solicitation materially misleading, Strategic has not alleged enough information to state such a claim in this case. That is, reasonable investors are not likely to conclude that the director election is a foregone conclusion simply because 20% of the shares are slated to vote in a certain way.

In conclusion, by simply alleging that the representation that UAHC has a proxy to vote St. George's shares is "misleading," without any additional information that would provide some context as to why the statement, although true, is misleading, Strategic has failed to state a plausible claim of securities fraud. Strategic has failed to allege enough detail to "nudge" its claim "across the line from conceivable to plausible." *See Bell Atl.*, 550

U.S. at 570.  Thus, the Court finds Strategic's allegations in count one fail to state a claim for securities fraud and will dismiss the count.

B.  Remaining Claims

The remaining claims in the complaint are state law claims that include breach of the UAHC's Articles of Incorporation, violation of the Michigan Business Corporations Act, and breach of fiduciary duty.  Strategic has consistently alleged in its various complaints that the basis of these claims is diversity jurisdiction under 28 U.S.C. § 1332(a)(3).  At the hearing on the motion, the Court indicated that it had serious concerns regarding whether the Court in fact had diversity jurisdiction over the state law claims due to Strategic's failure to properly allege the citizenship of all of the various parties.  It advised counsel at the hearing that by June 18 it should submit supplemental allegations regarding the citizenship of the parties.  The Court provided counsel with the various rules regarding the citizenship of various entities.

Strategic filed a second amended complaint[2] by the deadline established by the Court at the hearing.  Strategic's second amended complaint, however, still fails to set forth the citizenship of all of the parties, thereby preventing the Court from determining whether diversity jurisdiction exists.  Because Strategic has not rebutted the presumption that the Court lacks jurisdiction, the Court will dismiss Strategic's state law claims without prejudice.

1.  Diversity Jurisdiction

As stated above, Strategic's jurisdictional basis for the state law claims is diversity jurisdiction.  28 U.S.C. § 1332.  Specifically, they allege that subsection (a)(3) provides jurisdiction in this case.  28 U.S.C. § 1332(a)(3) provides district courts with original

---

[2] Strategic titled its second amended complaint as "First Supplemental Amended Complaint."

jurisdiction in civil actions between "citizens of different States and in which citizens of a foreign state are additional parties ...." 28 U.S.C. § 1332(a)(3).  Subsection (a)(3) requires that there be U.S. citizens on both sides of the litigation and that the citizens on one side be completely diverse from the citizens on the other side, just as would be the case under subsection (a)(1).  Subsection 1332(a)(3) simply provides that in the event there are foreign parties present in the action, provided there is otherwise complete diversity between all domestic plaintiffs and defendants, the presence of the foreign parties in the action does not destroy diversity of citizenship.  *See U.S. Motors, v. Gen. Motors Europe*, 519 F. Supp. 2d 671, 673 (E.D. Mich. 2007) ("Subparagraph (3), after all, essentially provides that the jurisdiction conferred under subparagraph (1) -- *i.e.*, jurisdiction over suits between 'citizens of different States' -- is not defeated by the presence of foreign citizens as additional parties.").  Accordingly, complete diversity among the domestic plaintiffs and defendants is still required under subsection (a)(3).

A natural person's citizenship depends on its domicile.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (United States citizen is a citizen of state in which he or she is domiciled).  "For adults, domicile is established by a physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).  Conversely, a corporation is deemed to be a citizen of the state under which it is incorporated the state in which it has its "principal place of business."  28 U.S.C. § 1332(c)(1).  A corporation's "principal place of business" is located in the state in which its head quarters are located. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

When an unincorporated association is party to a diversity action, a district court must consider the state citizenship of all members of the association to determine whether

diversity exists.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *Hooper v. Wolfe*, 396 F.3d 744, 748 (6th Cir. 2005) (partnerships); *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (limited liability companies).  Alleging the necessary citizenship of the various parties is not  a mere formality.  "[W]henever a party to a diversity suit is neither a business corporation nor a human being, the district judge and the lawyers for the parties must do careful legal research to determine the citizenship of the party rather than content themselves with making a wild stab in the dark...."  *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 598 (7th Cir. 2002) (Posner, J.).

    2.  Citizenship of the Parties

Despite giving Strategic specific warnings that its allegations in its first two complaints failed to properly set forth the citizenship of the parties in the action, including all members and sub-members of any unincorporated associations, Strategic has again failed in its second amended complaint to properly allege the citizenship of all parties, preventing the Court from determining whether diversity exists.

    a)  Strategic Turnaround Equity Partners, L.P.

Strategic is alleged to be a limited partnership.  SAC ¶ 5.  "For purposes of determining diversity jurisdiction, a limited partnership is deemed to be a citizen of every state where its general *and* limited partners reside."  *Hooper*, 396 F.3d at 748.  Strategic alleges that its general partner is Galloway Capital Management, LLC, an LLC with two members: Bruce Galloway and Gary Herman.  It alleges that Galloway is domiciled in Florida and that Herman is domiciled in New York.  SAC ¶ 5.  It further alleges that Strategic's limited partner is Strategic Turnaround Master Partnership, Ltd. "a company formed under the Cayman Islands laws with its principal place of business in George Town, Grand Cayman."  *Id.*  This allegation is deficient because it is unclear whether this

"company" is a corporation, a limited liability company, a partnership (as its name seems to imply), or some other type of business entity.  Because the Court is not aware of the citizenship of each members of Strategic, an unincorporated association, the Court cannot determine Strategic's citizenship and therefore cannot determine whether diversity of citizenship exists.

The citizenship of the remaining members is vital.  In the event one of the sub-members of Strategic were a citizen of a foreign state, such as the Cayman Islands, it might be possible that diversity jurisdiction under 28 U.S.C. § 1332(a)(3) would exist.  It is also just as likely that one of the sub-members shares citizenship with one of the many defendants, in which case, diversity would not exist.  Without knowing Strategic's full citizenship the Court cannot conclude that diversity jurisdiction exists.

b)  Defendant UAHC

UAHC is alleged to be a corporation incorporated under the laws of Michigan, with a principal place of business, *i.e.*, its headquarters, located in Michigan.  SAC ¶ 6. Accordingly, UAHC is citizen of Michigan for purposes of diversity jurisdiction.  28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

c)  Defendant Thomas Goss

Strategic alleges that Defendant Thomas Goss is a domiciliary of Michigan.   SAC ¶ 7.  Accordingly, he is a citizen of Michigan for purposes of diversity jurisdiction.

d)  Defendant John Fife

Strategic alleges that Defendant John Fife is a domiciliary of Illinois.  SAC ¶ 8. Accordingly, he is a citizen of Illinois for purposes of diversity jurisdiction.

e)  Defendant St. George Investments, LLC

Strategic alleges that Defendant St. George Investments, LLC is a limited liability company, with its sole member as John Fife, a domiciliary of Illinois.   SAC ¶ 9. Accordingly, St. George is a citizen of Illinois for purposes of diversity jurisdiction.

f)  Defendant Fife Trading, Inc.

Strategic alleges that Defendant Fife Trading is an Illinois corporation with a principal place of business in Illinois.  SAC ¶ 10.  Accordingly, Fife Trading is a citizen of Illinois for purposes of diversity jurisdiction.

g)  Defendant Iliad Research and Trading, L.P.

Strategic alleges that Defendant Iliad Research and Trading, L.P. is a Delaware limited partnership, "whose sole partner is Property Tax Assessor Records Group, an Illinois corporation with its principal place of business in Chicago, Illinois."  SAC ¶ 11. Accordingly, Iliad Research and Trading is at least a citizen of Illinois.  Strategic does not allege the identify or citizenship of Iliad Research and Trading's additional partner, however, and asserts that Iliad has only one partner.   The Court is unaware of the existence of any type of partnership that exists with only one partner.  The notion of a partnership with only one partner is illogical.  A partnership is "a voluntary association of *two or more persons* who jointly own and carry on a business for profit."  Black's Law Dictionary 1152 (8th ed. 2004) (emphasis added).  Moreover, the Delaware law, under which Strategic claims Iliad Research and Trading is organized, also defines a partnership as "an association *of two or more persons* formed under § 15-202 of this title, predecessor law or comparable law of another jurisdiction to carry on any business, purpose or activity." 6 Del. C. § 15-101(11) (emphasis added).

Strategic's failure to allege the identity and citizenship of the other various partners of Iliad Research and Trading, L.P. prevents the Court from determining whether complete diversity exists.

h)  Defendant Iliad Management, LLC

Strategic alleges that Defendant Iliad Management, LLC is a limited liability company whose sole member is John Fife, a citizen of Illinois.  SAC ¶ 12.  Accordingly, Iliad Management is a citizen of Illinois.

I)  Conclusion

Although Strategic has corrected many of the deficiencies in its prior complaints with respect to jurisdictional allegations, it has not corrected all of them.   Specifically, the citizenship of Strategic itself and Iliad Research and Trading is still unknown.  Strategic has failed to rebut the presumption that the Court lacks jurisdiction to hear the action despite being put on notice of the Court's doubts at the hearing and Defendants' motions to dismiss, which raise the issue.  *See Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) ("[I]t is to be presumed that a cause of action lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Accordingly, the Court must conclude that it does not have jurisdiction to entertain the remaining state law claims.

3.  Supplemental Jurisdiction

Though Strategic has not alleged the existence of supplemental jurisdiction in its complaint, it has claimed that the Court has supplemental jurisdiction in its response to UAHC and Goss's motion to dismiss.   Assuming that this is sufficient to assert supplemental jurisdiction, and assuming that the state law claims are so related to the

federal question claim that they "form part of the same case or controversy," supplemental jurisdiction is discretionary and the Court declines to exercise that discretion here.

28 U.S.C. § 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over a claim when:

> 1) the claim raises a novel or complex issue of State law;
>
> 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> 3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> ....

28 U.S.C. § 1367(c).

As the Sixth Circuit has noted repeatedly, a federal court should typically decline to address supplemental jurisdiction over a plaintiff's state law claims after dismissing the its federal claims.  *See, e.g., Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007)*; Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).  "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."  *Moon*, 465 F.3d at 728 (quotations omitted).  In ordinary cases the exercise of residual jurisdiction is improper.  *Id.*  Principles of comity between the state and federal jurisdictions are implicated when a federal court needlessly decides state law questions when all federal issues have been dismissed.  *Farris*, 503 F.3d at 521.

The Court believes that the interests of judicial economy and federal-state comity outweigh the concern over needlessly deciding Strategic's state law claims.  The Court finds this case to be an ordinary one in which the Court should abstain from deciding the

state law issues.  There is another good reason declining to decide Strategic's remaining state law claims.  The claims involve complex aspects of Michigan law regarding direct versus derivative shareholder actions, the intersection of contract and corporate law, the availability of incorporation by reference, the effect that a statute's repeal has on a corporation that has incorporated by reference the repealed law into its articles of incorporation, and the effect of the sale of a portion of a control share to a third party, an issue on which there is no Michigan authority.  *See* 28 U.S.C. § 1367(c)(1).  The Court finds the complexity of the state law claims at issue, the predominance that the various state law claims have over the single federal claim, and the fact that the federal claim has been dismissed, all suggest that the better route here is to decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(1), (2), & (3).  Although Strategic will likely not be able to obtain the pre-meeting injunctive relief it sought in this case because of the timing of the annual meeting, it may still assert its claims in state court and seek monetary damages for any harm it can prove it incurred through the alleged violations of Defendants.  It could also seek to set aside the election and have a new vote if it wished.  Such matters are properly left for Michigan's courts to decide.

## C. <u>UAHC's Last Minute Filings</u>

After the close of business on Friday, June 25, 2010, four days before UAHC's annual meeting, Defendants UAHC and Goss filed a renewed motion to dismiss aimed at the second amended complaint.  The motion simply seeks to challenge the second amended complaint and incorporates by reference the arguments made in the initial motion to dismiss.  In addition, UAHC filed a counterclaim against Strategic and a third-party complaint against members of Strategic and others not parties to the original action.  In the counterclaim and third-party complaint, UAHC alleges that Strategic and the third-party

defendants violated section 14(a) of the Securities and Exchange Act by making false or misleading statements in Strategic's definitive proxy statements beginning March 23, 2010.

The Court finds that UAHC's decision to wait until eve of the Court's decision on the various motions in this case just prior to UAHC's annual meeting, when the basis for the counterclaim and third-party complaint was known before this action was even filed, smacks of bad faith.  UAHC has sandbagged Strategic and this Court by filing its pleadings this late in the litigation and this close to UAHC's annual meeting.  UAHC was aware of the strict deadline the Court set for Strategic to submit amended jurisdictional allegations due to the necessity of deciding the issues prior to the impending June 29 meeting.  The primary relief sought in UAHC's recent pleadings -- that the Court order corrective disclosures covering Strategic's misleading statements and omissions in its proxy solicitation for upcoming meeting -- would have to be granted before the annual meeting set to take place on June 29, 2010 in order to avoid mooting the claims.  This effectively prevents Strategic and the third-party defendants from challenging the counterclaim and third-party complaint prior to the vote.

The Court will strike the pleadings under its inherent powers to sanction conduct undertaken in bad faith.  *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) ("A court may impose sanctions pursuant to its inherent powers ... when it finds the action in question was taken in bad faith.") (internal quotation marks omitted).  A district court's inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  Furthermore, the Sixth Circuit has long recognized the power of a district court to dismiss cases involving flagrant abuses of the judicial.  *See Reid v. Prentice-Hall, Inc.*, 261

F.2d 700, 701 (6th Cir. 1958); *Mitan v. Int'l Fidelity Ins. Co.*, 23 Fed. Appx. 292, 298 (6th Cir. 2001) (unpublished).  This is one of those cases.  There is quite simply no justification for UAHC's decision to wait until the very last minute before filing a counterclaim it was aware existed before this case began.  Had it filed its counterclaim sooner, Strategic would have had the chance to answer the pleading or move to dismiss it, and the Court would have had time to decide the matter accordingly.  With the annual meeting taking place on June 29, 2010, it is simply impossible for this to be done.  The Court will strike the pleadings.

## CONCLUSION AND ORDER

For the above reasons, the Court will grant, in part, Defendants UAHC and Goss's motion to dismiss the complaint insofar as it challenges count one of the complaints. Because the Court lacks subject matter jurisdiction over the remaining claims in the complaint, it must dismiss them as well.  All remaining motions are rendered moot.

**WHEREFORE,** it is hereby **ORDERED** that Defendants' motion to dismiss (docket nos. 35 and 52) is **GRANTED** in part.  Count one of the second amended complaint is **DISMISSED with prejudice**.  The remainder of the action is dismissed, without prejudice, for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED THAT** UAHC's counterclaim (docket no. 53) and third-party complaint (docket no. 54) are **STRICKEN.**

This case is closed.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 28, 2010

23

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 28, 2010, by electronic and/or ordinary mail.

Alissa Greer_____
Case Manager